27928. PASSLEY *v.* THE STATE.

DECIDED MARCH 13, 1940.

*Joe M. Lang,* for plaintiff in error.
*J. H. Paschall, solicitor-general,* contra.

MACINTYRE, J. The defendant was convicted of involuntary manslaughter. He excepted to the overruling of his demurrer to the indictment, and of his motion for new trial. The indictment charged that the defendant "did unlawfully kill one Mrs. Maggie Towe, a human being, in the peace of God and said State then and there being, without any intention to do so, but in the commission of an unlawful act, to wit: while he, the said Jesse Passley was driving and operating a certain 1929 model-A Ford tudor sedan automobile in a westerly direction along the Folsom and Adairsville public road about one-half mile west of Folsom, Ga., and about 200 yards west of the residence of R. E. L. Bolding, on a sharp curve

in said road, and at the time driving at a speed of 30 miles per hour on said sharp curve, and while passing a certain 1929 model-A Ford automobile being driven by Corris Adcock, and while meeting a certain 1929 model-A Ford tudor sedan automobile being driven and operated by J. D. Towe, in which said automobile so driven by said Towe the said Mrs. Maggie Towe was riding as a passenger, the said automobile so driven by said Towe in an easterly direction, while said Passley was driving in a westerly direction, and without giving the Towe car one half the traveled highway, and did drive and operate said automobile so driven by him, the said Jesse Passley, over on the side of the road and highway on which said Towe was driving, and on Passley's left-hand side of the road, and did drive his said automobile onto and against the automobile being driven by said Towe at said speed of 35 miles per hour, causing a head-on collision between the automobile driven by said Towe and the car driven by said Passley, thereby inflicting on and upon the body and person of said Mrs. Maggie Towe certain mortal wounds from which she then and there died." The defendant filed demurrers, the sum and substance of which were that the indictment failed to charge the defendant with a violation of any law, and did not allege "that he wantonly and wilfully or recklessly drove his car on the wrong side of the road;" that it was necessary to allege criminal or culpable negligence, and that the indictment was too vague and indefinite to apprise the defendant of the charges against him so as to enable him to prepare his defense.

The Code, § 26-1009, declares: "Involuntary manslaughter shall consist in the killing of a human being without any intention to do so, but in the commission of an unlawful act, or a lawful act which probably might produce such a consequence, in an unlawful manner," etc. It is to be specially noted that this was an indictment for involuntary manslaughter, in which there is no intention to kill. The essential elements of the crime of involuntary manslaughter in the commission of an unlawful act are, first, intent to commit the unlawful act; and secondly, the killing of a human being without having so intended, but as the proximate result of such intended unlawful act. *Wells* v. *State*, 44 *Ga. App.* 760 (162 S. E. 835). The law alleged to have been violated (Code, § 68-303 (c, d, e)) is in part as follows: "Every person operating a ve-

hicle upon the highways shall observe the following traffic rules and regulations: . . An operator meeting another vehicle coming from the opposite direction on the same highway shall turn to the right of the center on the highway, so as to pass without interference. . . An operator of a vehicle overtaking another vehicle going in the same direction, and desiring to pass the same, shall pass to the left of the vehicle overtaken; provided, that the way ahead is clear of approaching traffic; but if the way is not clear, he shall not pass unless the width of the roadway is sufficient to allow his vehicle to pass to the right of the center thereof in the direction in which his vehicle is moving: provided further, that no operator shall pass a vehicle from the rear at the top of a hill or on a curve where the view ahead is any way obscured or while the vehicle is crossing an intersection highway. . . An operator in rounding curves shall reduce speed and shall keep his vehicle as far to the right on the highway as reasonably possible." A violation of these regulations is a misdemeanor. Code, § 68-9908.

We do not think the indictment was defective because it failed to charge expressly that the defendant "wantonly and wilfully or recklessly drove his car on the wrong side of the road." It did charge the defendant with the offense of involuntary manslaughter. This offense does not involve malice, or wilfulness, or wantonness, and is expressly defined in the Code, § 26-1009, to be the killing of a human being without any intention so to do. The indictment here charged that the killing was unintentional, but was done in the commission of a certain described unlawful act, to wit: violating traffic regulations (Code, § 68-303). This was sufficient. *Hayes* v. *State,* 11 *Ga. App.* 371 (7), 380 (75 S. E. 523). The indictment in effect alleged every essential ingredient of the offense charged, and alleged in effect a violation of the traffic-regulations act (Code, § 68-303) "with sufficient clearness to enable the defendant to prepare his defense and the jury to clearly understand the nature of the offense, and the indictment is exact enough to protect the defendant from a second jeopardy." *Hawkins* v. *State,* 58 *Ga. App.* 386, 387 (198 S. E. 551), and cit.; *Ray* v. *State,* 47 *Ga. App.* 22 (169 S. E. 538); *Collins* v. *State,* 51 *Ga. App.* 147 (179 S. E. 869). The demurrer was properly overruled.

J. D. Towe, whose wife was killed and who was driving the car which the defendant ran into, testified for the State as follows:

"As to just how that collision took place; gentlemen, I had been out to my father's and had my family with me, which consisted of my wife and little girl; and when I came to that curve; my wife is extremely afraid of automobiles; hadn't been out in the car since last September; my father is in bad health and we had been down there; we came to that curve, and I was driving just as close to the bank on my right side as I could get, and I seen two cars racing; one was coming and the other one was by him, and he run just as straight into me as he could; I could do nothing but face death coming into me. . . As to whether or not I have any opinion as to how fast that car was running that ran into me, he couldn't have been making less than fifty, because it hit so hard; it turned it around and turned over in the road; he couldn't have been making much less than that."

Corris Adcock, the driver of the car the defendant was passing at the time of the accident, testified: "Jesse Passley was driving the car that was behind me. Then I met Mr. Towe on a curve. . . I expect I was about fifteen or twenty feet from Mr. Towe's car when the collision occurred. I think I had already passed Mr. Towe's car and had cleared it. I heard the collision, and I stopped as quick as I could and started back. As to whether or not I saw Mr. Towe's car when I got out, I saw both of them. With reference to which side of the highway, Mr. Towe's car was on the right, on Towe's right-hand side, but I don't hardly know how near the edge of the bank, but, giving the jury some idea, it was something like six feet, I guess. When I met Mr. Towe he was on his side. . . As to where Passley's care was after the collision, which side of the road, it was just about in the middle of the road, or over on the right. I don't mean Towe's right side, sorter in the middle, maybe, a little more on the right side than the middle. I didn't look at the tracks to see where the cars were when they struck each other." On cross-examination he testified: "Between me and Mr. Towe as we approached each other there was no dust to obscure my vision. . . My opinion, seeing him, as to how fast I would estimate that he was driving, he was going somewhere around twenty-five or thirty miles an hour. . . I guess I raised enough dust that the man right behind me would have been blinded. I said I guess he might; that is my opinion, from having seen the amount of dust raised. I was not racing with

anybody at all. . . I said that I was on the right-hand side of the middle of the road when I passed Mr. Towe, and he was on the right-hand side of the middle of the road from the direction in which he was coming, but there was about six feet between his car and the bank over there. . . As to how much further he could have gotten over if he had seen a car coming and tried to dodge, as to how much more room he would have over there, I don't know. I said he was about six feet from the bank, though. . . You could tell where his and Mr. Towe's cars had struck; you could see in the road where it happened. As to whether that was about the middle or a little on Mr. Towe's side of the road, it was somewhere about the middle, and his car had been knocked over—was on his own side, and Mr. Towe was on his side after they stopped. As to how long it was before I left there, just about five minutes, I guess. . . I saw Jesse Passley after it was over, talked to him. As to whether he was perfectly sober, normal in every way, he talked like he was."

Glenn Wright, who was in Corris Adcock's car, testified: "Jesse had been blowing his horn at us just before the collision occurred when we passed Mr. Roebuck's. I saw Mr. Towe's car before Jesse Passley ran into it. It was on the right-hand side. . . The back end of Corris Adcock's car was about ten feet from the back end of Mr. Towe's car when Mr. Towe's car and Jesse Passley's came together. I think the rear of Corris Adcock's car was about ten feet from the rear end of the Towe car when they struck. Towe's car was on the south side of the road then. When the collision occurred I got out and looked. Mr. Towe's car was against the bank after the collision, and Jesse Passley's car was in the center of the road. I know that the Passley car glanced after striking the Towe car; it glanced to the right, back to the center; it was about the middle of the road after it glanced back after the collision was over."

Trooper W. T. Greer testified: "I am with the State highway patrolmen. I have been working for them about fifteen months. We arrived about forty-five minutes after it happened. Trooper Futch went with me. [Towe's car] was as near to the bank as it could get. The Passley car was nearly in the middle on its right-hand side; it was turned over, lying on its right-hand side with the front headed back east; it had turned over and headed

back east. I examined the highway and road to determine the exact location of the two automobiles at the instant they came together. As to what conclusion I reached, there was only one mark that was left to identify where the cars had hit, and it was where the left front wheel of Mr. Towe's car had been knocked back some fifteen feet, right straight back. I mean that the Passley car had knocked the Towe car back approximately fifteen feet. The mark showed the two vehicles at the instant of the collision right against the bank. There is no ditch there; the road had been cut off and dragged to the right; the road was level. I mean that Towe was as far on the right side as he could get. . . When they hit, Mr. Towe couldn't possibly turn over; it was too close to the bank; it couldn't turn over; it was knocked approximately fifteen feet. . . From what I saw, and from what I have outlined to the jury, I have formed an opinion as to what the Passley's car speed was. Mr. Passley was driving better than forty, because he stopped Mr. Towe's car and also drove it back some fifteen feet. The two cars were about the same weight, maybe fifty or sixty pounds difference. These parties were all strangers to me. I had never seen or heard of them before." On cross-examination he testified: "You could tell where the front wheel went down, because it plowed in this hard surface a strip back some fifteen feet." When recalled he testified: "I asked her [Daffney Adcock, who was riding with the defendant] how it happened, and if it was true that Jesse Passley was trying to pass Corris Adcock on this curve; and she said he tried to pass a hundred or two hundred yards before the curve, blowing his horn, and she said she told him not to try to do that; she didn't say what he said; she said the accident happened so quick she didn't know how it happened."

Trooper Futch testified: "When we got there, Mr. Towe's car was on the extreme right side of the road, headed toward Folsom, right up against the bank. Jesse Passley's car was turned over on the side; the front of it was headed toward Folsom also. . . The only mark that we were able to find was where the left front wheel of Mr. Towe's car, in the sudden stop, it was torn down, and a mark showed where it had been knocked back eight or ten feet. I made a record of the distance it was knocked back, eight or ten feet, something like that. . . I saw the drawing that Mr. Greer had; he made it, I didn't. That drawing correctly por-

trays the location of the cars with reference to the road as good as we could get at it." The drawing mentioned showed that the defendant was attempting to pass the Adcock car and was on a curve, and was on the left side of the road with reference to the direction in which he was traveling at the time of the collision.

The defendant in his statement said: "We were riding around on that Sunday, Daffney and that girl and boy, and we went to Gum Springs and turned around, and coming back Corris Adcock was in front of me, and I drove behind him, and when we got there to that curve and the dust was so bad I slammed on my brakes; the sun and dust was in my eyes, and I throwed on my brakes, and it must have turned my car sideways; and that is the last thing I remember."

The evidence authorized the verdict. A special ground complains of the exclusion of certain testimony of Corris Adcock, that he thought that had Towe driven into the ditch on his right, which was one foot deep, he would not have turned over. The court excluded this on the ground that it was a conclusion and related to the car driven by J. D. Towe. Movant insists this evidence was relevant and pertinent, and was admissible to show all the surroundings at the scene of the collision, and this showed whether the same was accidental or resulted from unavoidable accident. The evidence was properly excluded, for a witness is not allowed to state his conclusions as to what he thought would have been the result if an event had come into being which in fact failed to happen. *Delegal* v. *State*, 109 *Ga.* 518 (2), 523 (35 S. E. 105); 3 Chamberlayne's Law of Evidence, 3141, § 2324. See *Moon* v. *State*, 68 *Ga.* 687 (4), 695; *Evans* v. *Kent*, 28 *Ga. App.* 172 (2) (110 S. E. 685). This ground does not disclose reversible error.

Another ground complains of the admission of the testimony of State highway troopers Greer and Futch as to their opinions as to the speed of Passley's car at the time of the accident, on the ground that it was inadmissible, that no foundation was laid to give basis of an opinion, that this evidence was no more than a guess, and was damaging and hurtful. To this contention we can not agree. It is true that the troopers were not present until about forty-five minutes after the accident. However, a proper foundation was laid; for it was shown that the troopers had been with the highway patrol for fifteen months, and had seen a large number of accidents, and

that the Towe care was knocked back about ten or fifteen feet after the cars collided; and based upon these facts, the troopers gave their opinion as to the speed of the defendant's car. It is said that an observer's estimate of the speed of an automobile is not much more than a guess, and therefore the results of a collision may furnish better evidence as to whether or not a car was going too fast. 15-16 Huddy's Ency. of Automobile Law, 337, 338, § 172. "Police officers, a part of whose business is to apprehend violators of speed ordinances, from observing the movement of vehicles within a given distance when compared with the time required in passing over the intervening space, can very closely estimate the speed of an automobile by seeing it pass. Persons of the classes indicated are not always present at or immediately prior to a collision; . . they are nevertheless competent to express opinions on that subject; and though their estimates may be conjectural, they are admissible, the weight and value of their testimony being for the jury to determine." Kelly v. Weaver, 77 Ore. 267 (150 Pac. 166, 151 Pac. 463, Ann. Cas. 1917D, 611). The evidence complained of was admissible, the weight and value of the testimony of the troopers being for the jury. This ground discloses no reversible error. See *Central of Georgia Railway Co.* v. *Keating,* 45 *Ga. App.* 811 (2), 814 (165 S. E. 873); *Stenger* v. *Weller,* 47 *Ga. App.* 863 (171 S. E. 829); *Augusta Railway & Electric Co.* v. *Arthur,* 3 *Ga. App.* 513 (60 S. E. 213); *McClendon* v. *State,* 7 *Ga. App.* 784 (68 S. E. 331). *Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*