35023, 35024, 35025. KING *v.* THE STATE (Three cases).

DECIDED FEBRUARY 9, 1954.

*W. E. Watkins, Thos. J. Brown, Jr.,* for plaintiff in error.
*Benjamin B. Garland, Solicitor-General,* contra.

CARLISLE, J. 1. On the general grounds of the motions for new trial and special ground 2, which is but an elaboration of the general grounds, the defendant insists that the evidence was insufficient to authorize the verdict, as it fails to show that the defendant was under the influence of intoxicants, that he failed to turn to the right of the center of the highway upon meeting the automobile of the decedents, with whose death he is charged, or that he otherwise violated any law which proximately caused their death. Under a construction of the evidence most favorable to the State after verdict, the jury was authorized to find: that the collision between the two motor vehicles occurred at a time when the defendant was on the wrong side of the road, and at a time when he was under a duty to turn to his right to permit the motor vehicle with which he collided, and which he was meeting, to pass; that, just prior to the collision, his vehicle was seen to weave back and forth across the center line of the highway; and that on the day of the collision he had consumed five mugs of beer, three of which were consumed during a period of an hour, approximately one hour before the collision. From those facts the jury was authorized to infer that the defendant caused the death of the persons named while violating Code § 68-307, which prohibits the operation of a motor vehicle upon a public highway by a driver while under the influence of an intoxicating liquor, and while violating Code § 68-303 (c), which requires an operator of a motor vehicle meeting another vehicle coming from the opposite direction on the same highway to turn to the right of the center of the highway so as to pass without interference. *Smith* v. *State,* 204 *Ga.* 184 (48 S. E. 2d 860) ; *Austin* v. *State,* 47 *Ga. App.* 191 (170 S. E. 86).

2. In special ground 1 of the motion for new trial, it is alleged that the trial court illegally admitted certain evidence concerning a chemical analysis of a blood sample which revealed that the person to whom the blood belonged would have been intoxicated to the extent of "dizziness"; that on objection from the defendant the court ruled the evidence out, but the ruling was ineffectual to erase the highly prejudicial testimony from the minds of the jurors. It appears from the evidence set out in this ground that the chemist who performed the analysis could not establish that the blood in question came from the defendant,

nor could any other witness on the trial do so. As this ground of the motion does not disclose what objections were urged against the evidence at the time of its admission, we will presume that the only objection urged was that the blood in question had not been identified as that of the defendant, for the trial court, in ruling out the evidence as requested, charged the jury: "Gentlemen of the jury . . . [the witness] testified with respect to chemical analysis of certain blood. In view of the fact, gentlemen, that it has not been proven that that blood was the blood of the defendant, any testimony pertaining thereto is withdrawn from you gentlemen's consideration and you will not consider any testimony with respect to the blood." This charge met and complied with the only objection which we take to have been made, and we do not perceive how the charge was ineffectual to withdraw the allegedly illegal evidence from the consideration of the jury.

3. Special ground 3 was argued neither orally nor in the brief of counsel for the defendant and, no general insistence having been otherwise made upon this ground, it is treated as having been abandoned.

4. The hypothetical question posed by the solicitor to one of the witnesses on the trial was based upon the evidence and reasonable inferences to be drawn therefrom, and is not subject to the objection made.

5. The following charge to the jury is not erroneous as stating the civil rather than the criminal rule for testing the defendant's responsibility for the alleged unlawful acts: "Intention shall be manifested by the circumstances connected with the perpetration of the offense and the sound mind and the discretion of the person accused. The intention which the law refers to is the intention to commit an act which the law says is unlawful. If the defendant intended to commit the act or acts set forth in the bill of indictment, and the act or acts were committed, and the act or acts are unlawful as charged in the bill of indictment, and as a proximate result of such intended unlawful act or acts . . . [the three persons named in the three counts of the indictment] were each or either unintentionally killed, the defendant would be guilty of involuntary manslaughter in the commission of an unlawful act or acts with

respect to such count as you might find those àcts to exist if you should find they do exist."

The elements of the offense of involuntary manslaughter in the commission of an unlawful act are (1) intentional commission of the alleged unlawful acts, and (2) the killing of a human being as the proximate result of such unlawful act but without intent to kill. *Wells* v. *State,* 44 *Ga. App.* 760 (162 S. E. 835); *Cammons* v. *State,* 59 *Ga. App.* 759, 766 (2 S. E. 2d 205); *Passley* v. *State,* 62 *Ga. App.* 88 (8 S. E. 2d 131). The court's charge here is a correct expression of the criminal rule for testing an accused's responsibility for causing the death of a human being as the result of unlawful acts intentionally committed, but where the killing was unintentional. There is no merit in special ground 5 of the motion.

The trial court did not, therefore, err in denying the motions for a new trial for any reason assigned.

*Judgments affirmed. Gardner, P. J., and Townsend, J., concur.*