74047. WHIDBY et al. v. COLUMBINE CARRIER, INC. et al.
(356 SE2d 709)

BIRDSONG, Chief Judge.

Plaintiffs Virginia and Glen Whidby brought this wrongful death action on behalf of their daughter, Janet Whidby, against Marion A. Williams, the driver of a tractor trailer truck, the owner of the truck, Columbine Carrier, Inc., and its insurer The Insurance Company of the State of Pennsylvania. The defendant, Williams, was traveling east on Highway 96 in Houston County at about 11:00 p.m. on April 8, 1983 when he struck Janet Whidby's vehicle at the intersection of Highway 96 and Moody Road. A stop sign and blinking red light faced Moody Road where she attempted to enter the intersection northbound. There was no stop sign on Highway 96, nor any stop light, but there was a caution light, and there was a bend or curve of the road on Highway 96 as it approached Moody Road. It had been raining, or was raining at the time of the collision. The plaintiffs contended and sought to prove defendant Williams was speeding and driving too fast for conditions. The jury returned a verdict for defendants and the plaintiffs appeal. *Held:*

1. The plaintiffs attempted to introduce evidence concerning Williams' driving record, which they contended would prove Columbine Carrier, Inc. was liable as respondeat superior and also for negligently hiring and retaining Williams. This evidence included certified copies of speeding citations, a letter written by Columbine Carrier two months before the collision tending to confirm Columbine knew about Williams' driving record and his license suspension and knew that he falsified his application for employment. Plaintiffs also sought to show Columbine failed to obtain information from Williams' previous employers as required by Section 392.23 of the Federal Motor Safety Regulations. As to all of this, the trial court granted defendant's motion in limine.

The plaintiffs contend the evidence was pertinent to the negligent entrustment or employment claim and that the jury would have arrived at a different verdict if it had been given the benefit of the evidence. No doubt this might be so but, if so, it would have proved its own error. Defendant Columbine Carrier admitted liability as respondeat superior for any causative negligence of defendant driver, Williams. The jury returned a verdict for Williams, which means it found Williams not at fault by a preponderance of the evidence. His negligence or lack of negligence on this occasion could be proved only by the facts of the event, and not by evidence of his prior driving

record or of his general character for carelessness or recklessness in driving. *Willis v. Hill*, 116 Ga. App. 848, 862 (159 SE2d 145); rev'd on other grounds, 224 Ga. 263 (161 SE2d 281), reaff'd 117 Ga. App. 855 (162 SE2d 299). Evidence of defendants' similar acts or omissions on other and different occasions is not admissible. *Thompson v. Moore*, 174 Ga. App. 331 (329 SE2d 914, aff'd but rev'd on other grounds, *Moore v. Thompson*, 255 Ga. 236 (336 SE2d 749); *Wright v. Dilbeck*, 122 Ga. App. 214 (4) (176 SE2d 715); OCGA § 24-2-2. It is not probative of the issue at hand and there is a substantial likelihood that the defendant's criminal record of prior or subsequent offenses may prejudice the jury against him as to the question of liability in the particular case. *Thompson v. Moore*, supra; *Willis v. Hill*, supra at 864. Once liability for the act has been found to exist, evidence of similar acts or occurrences, or a bad driving record indicating wilfulness or reckless disregard of consequences, may become relevant to punitive damages in a bifurcated proceeding. *Moore v. Thompson*, supra; *Chupp v. Henderson*, 134 Ga. App. 808, 811 (216 SE2d 366). But this is a wrongful death action (OCGA § 51-4-5) and the plaintiffs did not seek punitive damages (see *Truelove v. Wilson*, 159 Ga. App. 906 (2) (285 SE2d 556)); and so the evidence lost any relevance once Columbine admitted liability as respondeat superior. *Thomason v. Harper*, 162 Ga. App. 441, 442 (289 SE2d 773). The trial court did not err in excluding evidence of Williams' driving record or Columbine's failure to ascertain it, or its actual or constructive knowledge of it or of the fact he had falsified it in his employment application.

2. The plaintiffs/appellants, however, contend the evidence of Williams' driving record and falsification of the same in his application for employment was admissible to impeach Williams' testimony, elicited on cross-examination, that he considered himself a safe driver generally and that he was driving safely on the night in question. Appellants give no argument or citation of authority to this court in support of this enumeration of error; therefore, it is considered abandoned. *Brown v. Phillips*, 178 Ga. App. 316 (2) (342 SE2d 786); *Wilkie v. State*, 153 Ga. App. 609 (1) (266 SE2d 289). We note, however, that Williams' statement that he considered himself a safe driver generally has no relevance to whether he drove negligently and caused the collision on the night in question; and conversely his statement that he was driving safely on the night in question is not proven to be false (impeached) by any evidence that he had driven unsafely on other occasions.

3. The trial court did not err in refusing to admit certified copies of defendant Williams' criminal record for theft by taking and for theft by receiving stolen property, first offender status. This evidence, in a civil case, when the defendant has not put his character in issue, would tend to be more prejudicial than probative, and the trial court

did not err in excluding it.

Evidence of criminal record has been ruled admissible against a defense witness in a criminal case. *Warren v. State*, 179 Ga. App. 890 (348 SE2d 88). In *Hightower v. Gen. Motors Corp.*, 175 Ga. App. 112 (332 SE2d 336), we held a first offender guilty plea is admissible to impeach a person in a civil suit which he had instigated. On certiorari, the Supreme Court noted a distinction between the use of such evidence in a civil case and its use in a criminal case, and deliberately refrained even from approving or disapproving *Moon v. State*, 154 Ga. App. 312 (1) (268 SE2d 366) where it was held admissible to impeach a defense witness in a criminal case. The Supreme Court expressly declined to reach the question whether "a witness" may be impeached by proof of a conviction for a felony or a crime involving moral turpitude, a proposition based on *Giles v. Jones*, 169 Ga. App. 882 (315 SE2d 440) (impeachment of plaintiff in civil case) and *Favors v. State*, 234 Ga. 80 (3) (214 SE2d 645) (use of first offender plea to impeach a State's witness in a criminal trial). The Supreme Court carefully limited its holding as follows: "[W]e hold that a guilty plea as to which a *plaintiff in a civil case* has been granted first offender treatment is admissible in evidence to *disprove and contradict such party's testimony given in the civil case.*" (Emphasis supplied.) *Hightower v. Gen. Motors Corp.*, 255 Ga. 349, 352 (338 SE2d 426). We think it is significant that in *Hightower* the evidence was admitted *to disprove specific facts* testified to by the plaintiff in that civil case which he instigated. Id. p. 351.

In *Giles v. Jones*, supra, we held as a general principle applying to the admissibility of a criminal record for impeachment: " 'Ordinarily, the issue as to the relevancy and materiality of evidence is for the trial court. Indeed, any evidence is relevant *which logically tends to prove or to disprove a material fact which is at issue in the case,* and every act or circumstance serving to elucidate or to throw light upon a material issue . . . is relevant.' [Cit.] 'When facts are such that the jury, if permitted to hear them, may or may not make an inference pertinent to the issue, according to the view they may take of them, in connection with the other facts in evidence, they are such that the jury ought to . . . hear them.' [Cit.]" (Emphasis supplied.)

The defendant's criminal record did not tend to "disprove and contradict [the defendant's] testimony" in this civil case *as to a specific material fact testified to by defendant. Hightower*, 255 Ga. at 351-352, *Giles*, supra. It tended at best only to impeach the character and credibility of the defendant generally, in this civil suit instigated by another; the fact that defendant had committed theft in the past had no logical bearing on the specific issue of negligence in driving the truck. The trial court did not err in excluding this evidence. See *Metropolitan Property &c. Ins. Co. v. Shepherd*, 166 Ga. App. 300,

301 (304 SE2d 74).

4. Appellants' enumerations of error 10, 12 and 13 have been considered. They are without any citation of authority for the position of appellants that they were entitled to certain jury charges. We conclude these enumerations either are without merit or, if any of the charges should have been given, we are confident the appellants on new trial will support their entitlement to them by citation of authority and that any errors will not recur.

5. In enumerations 9 and 11, appellants contend the trial court erred in failing to include jury instructions about state and federal rules and regulations as to a motor carrier operation, in its charge on negligence per se — driving while ill or fatigued. Appellants did not enter into evidence any such rules and regulations and neither the trial court nor this court is obliged to take notice of them unless they are adopted pursuant to Georgia statutory authority. See *Dix v. State*, 156 Ga. App. 868 (275 SE2d 807). Appellants do not cite to this court any state motor carrier rules which have adopted any federal motor carrier rules. These enumerations are without merit.

6. In their sixth enumeration, appellants contend it was error to exclude the investigating officer's opinion concerning Williams' speed at the time of the collision. Appellants contend the officer would have testified that in his opinion, Williams' truck was traveling 75-80 mph.

Officer Pagura testified he answered the police bulletin and arrived at the scene at 11:17 p.m., shortly after the collision occurred. He testified the rain had "been coming down" before he arrived but had slowed to a sprinkle when he got to the scene, and 30 minutes later it began coming down hard again. When he arrived, he saw the tractor trailer truck jackknifed where it had come to rest next to Miss Whidby's vehicle on an embankment northeast of the intersection. Evidence showed the truck hit Miss Whidby's Fiat broadside on the left driver's side and both vehicles then "swirled over" or were propelled some distance from the point of impact onto a red clay embankment. The officer testified he measured the distance between the Fiat's point of rest and the tire rim gouge marks at point of impact; this was 147 feet, 3 inches. He estimated the distance the truck traveled from point of impact at 155 feet. He observed that the Fiat had sustained severe damage to its left side where it was struck; the truck sustained major front-end damage. (An accident reconstructionist testified the truck apparently braked approximately 100 feet before hitting the Fiat, then traveled 140 feet after impact and traveled 20 feet further into or along the clay embankment. This witness also testified that judging from the amount of destruction depicted in photographs in evidence, it "literally would appear the [Fiat] exploded," that the truck had jackknifed and was almost facing rearward where it came to rest, indicating a complete loss of control of the truck. The accident

reconstructionist based his testimony that the truck driver had braked the vehicle 100 feet before impact, upon another witness' testimony that he heard the different sound of brakes being applied on the truck, coupled with the reconstructionist's own calculations as to the length of the truck and length of time necessary to activate the brake mechanism after it was applied. He based his conclusion that the truck had hit the embankment with great force, in part upon evidence of residents of the nearby house that they heard or felt an "earth-shaking" explosion.)

The investigating officer, Pagura, testified he had investigated probably several hundred accidents in a 9-½-year period, and had investigated 12 or 15 wrecks involving a tractor trailer and a car. He had attended an advanced course in accident investigation at the Georgia Police Academy. He testified that speed of the vehicles can be estimated and "[backed] up 100% if there are skidmarks," but if there are no skidmarks, speed can be estimated from the damage done to the vehicles and the distance they travel after impact. He had been trained in this method of investigation and had occasions to observe damage and distance in other instances. The next day after the collision he returned to the scene and found no skidmarks. When he attempted to give his opinion as to the speed of the truck, objection was made and the trial court held the officer had laid no proper foundation for an opinion because he could not relate speed to distance from impact. Pagura explained that if a vehicle going 15 mph bumps another, there will be minimal damage, but if one is going 50 mph, there will be more damage, so he knew the truck was running faster than 55 mph. Objection was made again; the officer stated he based his opinion upon the defendant's statement to him that he was in a hurry to get home, and upon the degree of damage done and distance from point of impact to point of rest. The trial court sustained another objection, on the basis that the witness had not shown how his findings relate to some measure of speed but simply stated damage to the embankment and to the vehicles.

The officer was asked to state how he applied his formulae learned in training; he said: "there's no way that you could put your tables together on that accident . . . as far as computing a speed from drag factor [coefficients of friction]. . . . It was just a simple hydroplane. . . . You have your road and . . . a little sheet of water . . . and it's like stopping on a frying pan . . . with a pair of roller skates . . . there's nothing except your physical evidence. . . . Usually [people] say well I was going just 55 or 60 and . . . for the thing that happened that night and telling me he was kind of in a hurry to get home and he's running 55 or 60 in the pouring rain . . . I just feel like the vehicle was traveling faster than that." Again the court sustained an objection to Pagura's giving an opinion as to speed. The officer

repeated his formulations of the jackknifing of the truck, the damage done to the vehicles and to the red clay embankment and the distance traveled after impact. Again the court refused an opinion because the officer had "still not made that causal link that we're looking for as far as him being qualified as an expert . . . he had yet to show how [what he found at the scene] related to the particular miles per hour . . . which I think is required of an expert. . . ." All of this was in the presence of the jury. The witness offered to give his opinion as a layman, but the trial court ruled that he could not even give his opinion as a layman because "he did not see the accident . . . he has not given any testimony of how what he found related to speed."

The jury retired. The court then explained that the witness had testified he could calculate speed by skidmarks but "[he has not] testified to another formula by which he can apply the criteria . . . something where he can say well, the car was bent 4 inches, 6 inches, 8 inches, and based on previous experience or formulas [sic] this related to X miles per hour. . . . He's yet to tell me how he can calculate speed . . . [B]ased on skidmarks he can determine the speed . . . but . . . there are no skidmarks in this case." Plaintiff's attorney interjected that the witness testified he "learned how to estimate speed on physical damage to the vehicles and how far they traveled after," but the court said "he has not told us how he could do it." To reply to this, the witness said: "[I]f you have a vehicle that looks like it's been involved in an explosion and you see a vehicle that's been hit going 20 miles an hour bent up a little bit . . . versus one that looks like its been through a meat grinder that's a great indication [to me and anyone] who's ever investigated any number of accidents. . . . It's as simple as that." He added: "[T]he damage this truck sustained and the damage to the automobile — when you see a car after an accident in that kind of shape, that's a devastating impact and you don't see a devastating impact going at 25, 30 miles an hour. [And you do not see that devastation at 55 mph.]"

Still outside the jury's presence, the witness was allowed to proffer his opinion that the truck was going 75-80 mph, that in his opinion the truck driver "was coming on around the bend . . . at a high rate of speed, saw Miss Whidby pull out of Moody Road onto Highway 96, applied those brakes and went into a hydroplane and there he's on a collision course with Miss Whidby and her vehicle. When they hit they traveled 147, or 155 feet down and [hit] a clay bank and both of them came to rest. . . . I see the severe damage done to the truck after impact with the car. . . . I've never seen a wreck like that at 55 miles per hour whether it be an 18 wheeler or a small sports car." The court again querried how the witness decided the truck's speed was 75-80 mph. The witness explained that at 55 mph, if a driver brakes and has contact with another car, his vehicle will not

"travel that far after impact . . . the damage to the car was devastating and damage to the big bumper . . . and all that heavy metal part of the 18 wheeler. I've just never seen one that messed up unless its overturned or . . . burned up or something, but as far as damage an automobile that big with that much damage, it was just some momentum there."

As to the court's insistence he could not give an opinion, the witness said: "[I]f every accident could be your classic wreck on a beautiful sunny day on nice dry pavement we could get your skidmarks . . . but in a . . . hydroplane, once you hit the brake you just skim along at whatever speed you were traveling. You do not slow down when you hydroplane . . . you're on just a collision course. . . ." The court insisted: "But you don't have to speed to hydroplane, do you?" And the witness replied: "That's what I say, if you slow down in the rain, the pouring down rain . . . to 35, 40 miles an hour [then] upon impact you're not going to travel 155 feet after impact." The witness reiterated that he based his finding upon years of experience and comparisons in seeing damage done to vehicles. The court ruled he was not qualified as an expert or a layman to give an opinion. Ultimately the court stated: "Based on what I've heard the [expert] say . . . he could not calculate the speed and based on that from what I gather it would simply be a guess as to what speed, any speed he would give in his testimony and that's the reason I'm not allowing him to testify because . . . it's just simply a guess and that's not an opinion the way I see it."

The trial court erred in excluding the officer's opinion as to speed of the truck. As the defendants contend, it is "well established that whether a witness has such learning and experience in a particular art, science, or profession as to entitle him to be designated as an expert, or to be deemed prima facie an expert, is a matter addressed to the sound discretion of the trial court, and such discretion will not be disturbed unless it is manifestly abused." *Carroll v. Hayes*, 98 Ga. App. 450, 452 (105 SE2d 755). However, in *Massee v. State Farm &c. Ins. Co.*, 128 Ga. App. 439, 443 (197 SE2d 459), we held there can be no doubt a police officer with investigative experience on automobile collisions is an expert. What the trial court ultimately ruled was that because the witness had said there was no way to *mathematically* calculate speed unless there were skidmarks, and there were none, he could not "calculate" speed at all. The officer's opinion, based on training and experience in judging the degree of damage done to the vehicles and the distance they traveled after impact, was not a "mathematical calculation," but the law of evidence does not require an opinion as to speed to be a mathematical calculation to be admissible. What the trial court ruled was that the opinion was "simply a guess" and therefore was not *competent* to prove speed, but this goes to the

worthiness or credibility of the evidence, which is the entire jury question. The function of the trial court in determining the admissibility of evidence is to determine its *legality*. See *Mulkey v. State*, 155 Ga. App. 304, 305 (270 SE2d 816). As to that question, "[t]he policy of Georgia . . . is to admit evidence, even if its admissibility is doubtful, because it is more dangerous to suppress the truth than to allow a loophole for falsehood." *Gibbons v. Md. Cas. Co.*, 114 Ga. App. 788, 796 (152 SE2d 815). If evidence is relevant, has probative value, and is not inadmissible for some reason of prejudice or illegality, it should be admitted. "It has long been the rule in this State that where the relevancy or competency of evidence is doubtful, it should be admitted and its weight left to the determination of the jury." *Lovejoy v. Tidwell*, 212 Ga. 750, 751 (95 SE2d 784); *Carroll*, supra. We have stated: " 'In respect to the opinion testimony as to speeds, time, and distance, it has been held many times that same is very unreliable, but nevertheless, admissible.' " *Harris v. Collins*, 145 Ga. App. 827, 828 (245 SE2d 13). As to such testimony being "very unreliable," we think that is the entire jury question.

It has been held that even a lay witness (*Horton v. State*, 119 Ga. App. 43 (3) (166 SE2d 47)), or a teenage child could give an estimate of speed if he gives the facts and basis of his opinion. *Gibbs v. Gianaris*, 137 Ga. App. 18, 19 (223 SE2d 4). In *Gibbs*, the witness whose opinion was allowed was 14 years old, had never driven an automobile and had seen the plaintiff's vehicle "just for a brief second," and conceded his estimate of speed was a "guess." Another witness whose opinion was allowed was 15, had ridden in and driven cars, and only saw the plaintiff's vehicle "between a split second and a second." Many cases cited in *Gibbs* approve the admission of opinions of lay persons based on little more than a guess, and one case held that even where one "refuses to swear positively that his estimate of the speed is absolutely accurate, where it appears that he believes it to be substantially correct, the credit to be given such testimony [is] for the jury." Id.; *Ellison v. Evans*, 85 Ga. App. 292 (69 SE2d 94).

A lay person has been permitted to offer an opinion as to speed even though it was "a mere guess," based upon "(the) way the defendant's automobile 'dragged' the witness's 'car around' " when they collided. It was held such a guess had probative value. *Rentz v. Collins*, 51 Ga. App. 782 (4) (181 SE 678). It has been held that an experienced auto-wrecker driver is qualified "to state facts and give his opinion [from these facts] as to the point of impact and between what objects." *Royal Crown Bottling Co. v. Stiles*, 82 Ga. App. 254, 265 (60 SE2d 815). With such opinions being held to have probative value, it is difficult to see how an experienced police officer who has investigated collisions for 9-½ years, can be said to be not qualified as an expert, or that his opinion based on the physical evidence found at

the scene has not any probative value as a lay opinion. In *Bell v. Brewton*, 139 Ga. App. 463, 464-465 (228 SE2d 600), we said: "Even assuming that [the officer's] testimony reconstructing the accident and that the position of the vehicles was opinion evidence, or that his qualifications were weak, this 'could affect the credibility of his testimony but not its admissibility.' [Cits.]"

Police officers who are experienced in investigating collisions may give an opinion as to speed based on physical evidence as to how far the vehicles traveled after impact and the damage incurred after impact, even though the officers did not see the collision, may not have shown that they had learning and experience to qualify themselves as experts, and even where one stated he did not consider himself an expert. *Thornton v. Gaillard*, 111 Ga. App. 371 (141 SE2d 771). Law enforcement officers who did not see a collision have been allowed to give their opinions as to speed, grounded as a proper foundation on their experience, and based upon the fact that the plaintiff's car had been knocked back a certain distance. *Passley v. State*, 62 Ga. App. 88, 95 (8 SE2d 131). Moreover, in that case, we said: "It is said that an observer's estimate of the speed of an automobile is not much more than a guess, and *therefore the results of a collision may furnish better evidence as to whether or not a car was going too fast.* [Cit.] 'Police officers . . . are not always present at or immediately prior to a collision; . . . and they are nevertheless competent to express opinions on that subject; and though their estimates may be conjectural, they are admissible, the weight and value of their testimony being for the jury to determine.' [Cit.] 'The evidence complained of was admissible, the weight and value of the testimony of the troopers being for the jury.' " (Emphasis supplied.)

In *Firestone Tire &c. Co. v. King*, 145 Ga. App. 840, 846 (6) (244 SE2d 905), we held: " 'A qualified witness may give opinion evidence as to speed based on data observed immediately after a collision, such as skid marks, distances, and the positions of and damage to the vehicles. If it be developed by further examination that the opinion is based on inadequate knowledge, this goes to the credibility of the witness rather than to the admissibility of the evidence.' [Cits.]"

This officer's opinion as to speed was admissible whether he be considered a lay person or an expert.

We have no doubt the exclusion of it was harmful and prejudicial. The jury heard the officer's opinion that the truck was running faster than 55 mph, but this evidence was too vague and inconclusive on the question of negligence to amount to any proof; and when the defendant's objection to this was sustained, the jury heard the trial court's ruling that the witness had not laid a proper foundation and had given no evidence upon which to relate such an opinion. The jury repeatedly heard the trial court's statements which under *these* cir-

cumstances amounted to a comment on credibility, that without any evidence of skidmarks in the case the officer was not qualified to state an opinion *either as an expert or a layman,* and had shown no "causal link" or mathematical basis to estimate speed based on damage to the vehicles and distance traveled after impact; and indeed if the jury had any doubt left that this witness' testimony was not credible without evidence of skidmarks, it must have been erased during cross-examination when the same attack was made on the officer's ability to give even any opinion even as to the truck's going faster than 55 mph. The witness was finally allowed to say the collision in his opinion was a "high speed impact," but this was not even a suggestion of negligence, for as the defense counsel himself said: "I don't know what [high speed impact] means . . . 40 mph could be a high speed impact." Moreover, the jury did not hear at all the officer's full explanations as to his reasoning and basis for concluding that the devastation he observed and the distance the vehicles traveled after impact, in his experience could not have occurred if the truck was going 55 mph and that he had never observed such devastation in a collision at 55 mph; nor did they hear his explanation that while a vehicle does not have to speed to hydroplane, if it hydroplanes while it is traveling at a lower speed in pouring-down rain it will not travel 155 feet after impact. The jury did not hear the witness' significant statement that he based his opinion as well upon *the severe damage the truck sustained after the impact* when it hit the embankment, which coupled with his testimony as to momentum (which they likewise did not hear), might have had considerable effect upon their weighing of the evidence.

The investigating officer's opinion as to speed was not merely a cumulation of the testimony later offered by an accident reconstructionist, for the excluded testimony was by the investigating officer who was an eyewitness to the scene, whereas it was proven, under critical scrutiny, that the reconstructionist was a professional consultant who was not present at the collision scene, that he never viewed the vehicles except in photographs and in some of these, the vehicles were removed from the scene and "cleaned up," and that he had not viewed the embankment except in isolated photos and never saw the intersection until after the roadway had been rearranged almost beyond recognition.

It was the reconstructionist's opinion that "where Miss Whidby initially started up [to the intersection] . . . due to the high rate of speed of this truck [Miss Whidby] wouldn't even have seen the truck and that by the time that she got to the impact area the truck had been coming in here and at this point is doing 100 feet per second and that she is simply caught in a trap with no place to go." But the basis of this opinion was similar to the basis used by the investigating of-

ficer in formulating his own refused opinion, and the jury might well have concluded the reconstructionist's opinion was infected by the same absence of skidmarks that, as they had heard, rendered the officer's opinion an incompetent guess. Moreover, the reconstructionist's opinion was delivered in the arcane, by a plaintiff's consultant who first saw the rebuilt intersection two years after the event; and it cannot be said to have so adequately replaced the testimony of the officer who investigated the wreck when it occurred, that it rendered harmless the error of excluding that officer's first-hand opinion. The opinion of the investigating officer could be construed by a jury as adding credibility to the opinion of the reconstructionist.

This is not a case where the error becomes harmless when the same party later states the same evidence or to the same effect. See *Transamerica Ins. Co. v. Smith*, 147 Ga. App. 574, 577 (249 SE2d 663); *Seal v. Aldredge*, 100 Ga. App. 458, 460 (111 SE2d 769).

The vital question in this case was whether Williams was negligent, and the defendant's speed as he approached the intersection could contribute to the answer to that question. The investigating officer offered his opinion as to that speed, based on his experience and his view of the intersection and road as it existed on the night of the collision of the damaged vehicles and the distance from point of impact, and the current weather conditions. The refusal to allow the jury to consider the opinion of the only expert investigating eyewitness to the scene, could have eviscerated the plaintiff's case in that it threw them back upon the complicated testimony of an expert who could testify only as he reconstructed evidence several years old. See *Harris v. Collins*, supra. Indeed, when this expert's testimony was *evidently successfully* attacked on this basis on cross-examination, the plaintiffs were left with no specific evidence at all as to the vital question in the case. It has been said that when other evidence in a case does not demand the verdict rendered, an error of this magnitude requires reversal. *Thigpen v. Batts*, 199 Ga. 161 (2) (33 SE2d 424). In this case, not only does the other evidence not demand a defendants' verdict, but if the investigating officer's testimony as to speed had not been erroneously excluded, and the general incredibility of his testimony commented upon by the trial court, the jury might have concluded this evidence, and the reconstructionist's testimony which it would have bolstered, may have caused a different result.

Furthermore, the error was compounded when the defense on cross-examination read to the jury half a sentence of the officer's inquest testimony showing that on his accident report he wrote down the defendant's speed as 55 mph based on what the defendant had told him at the scene. The plaintiffs, concerned by this attempt to impeach the officer by proof of inconsistent testimony, attempted to read the entire sentence to the jury to explain why the officer wrote

down 55 mph on the accident report (which evidently was because he would have been "foolish" to put on a police report and issue a criminal citation for what he could not prove beyond a reasonable doubt) and particularly to show that he had not made inconsistent statements; but the plaintiffs were not allowed to remove this characterization of the officer's testimony because "he can't get back into his opinion [as to speed] from this situation."

This judgment is reversed for the reasons given in Division 6; accordingly we find it unnecessary to address appellant's enumerations based upon the general grounds.

*Judgment reversed. Deen P. J., and Pope, J., concur.*

DECIDED APRIL 15, 1987.

*Lester Z. Dozier, Jr.*, for appellants.
*John C. Edwards*, for appellees.