A99A0522. TAYLOR et al. v. RACETRAC PETROLEUM, INC. et al.
(519 SE2d 282)

JOHNSON, Chief Judge.

Ronald Steed was killed and David Telenko was injured when the car they were in crashed into a utility pole. Robin Taylor, Steed's sister and the administratrix of his estate, along with his parents, Mack and Bobbie Steed, sued RaceTrac Petroleum, Inc., claiming it is liable for Steed's death because Telenko, who was under the lawful drinking age of 21, was driving the car while under the influence of beer that he had bought at a RaceTrac store. RaceTrac denied liability, contending, among other things, that Steed, not Telenko, was driving at the time of the accident, and that even if Telenko was driving, Steed assumed the risk of injury by riding with him. The case was tried before a jury, which returned a verdict in favor of RaceTrac.

Taylor and the Steeds appeal from the judgment entered on the verdict. They challenge the admission of evidence regarding Steed's prior drug and alcohol use and his conduct on prior occasions, the exclusion of an emergency room statement made by Telenko and the jury charge on assumption of risk.

The challenge to the evidence of Steed's prior drug and alcohol use and his prior conduct is correct, and we reverse the judgment on that ground. Although the challenges to the exclusion of Telenko's statement and the assumption of risk jury charge are without merit, we address those issues because they are likely to arise again on the retrial of the case.

1. Taylor and the Steeds assert the trial court erroneously admitted evidence of Steed's prior drug and alcohol use, his reckless driving on other occasions and his conduct on prior occasions. We agree with the assertion.

The trial court allowed RaceTrac to introduce testimony from Telenko that Steed had previously taken LSD and smoked marijuana, that Steed had drunk alcohol with his parents on prior occasions, that Steed liked to engage in risky behavior and that on prior occasions Steed had driven fast and not obeyed traffic laws.

The court also allowed RaceTrac to elicit testimony from Meghan Robbins, a friend of both Steed and Telenko, that Steed was part of a group that took LSD, drank beer, and smoked marijuana; that Steed and his friends sometimes drank at the Steeds' house; that Steed engaged in risky behavior; that he once destroyed a pay phone; and that Steed was involved in a fight during a school spring break.

The general character of parties and especially their conduct in other transactions are irrelevant matters. OCGA § 24-2-2. A party's conduct on the occasion at issue in the case may be proved only by the facts of that event and not by evidence of the party's prior acts or general character for carelessness or recklessness. *Feinberg v. Durga*, 189 Ga. App. 733, 735 (3) (377 SE2d 33) (1988). Such evidence is not probative of the issue at hand and may prejudice the jury against that party as to the question of liability in the particular case. *Whorton v. Boatwright*, 233 Ga. App. 369, 370 (504 SE2d 216) (1998); *Whidby v. Columbine Carrier*, 182 Ga. App. 638, 639 (1) (356 SE2d 709) (1987), overruled on other grounds, *Pender v. Witcher*, 194 Ga. App. 72 (389 SE2d 560) (1989). One party is not permitted to influence the jury to find against the other party on account of some act which he may have committed on another occasion, in a different situation and with other parties. *Leo v. Williams*, 207 Ga. App. 321, 322 (428 SE2d 108) (1993).

In the instant case, the evidence of Steed's alleged prior drug and alcohol use, alleged reckless driving on other occasions and alleged violent acts on other occasions are irrelevant to the question of liability for the accident in this case. There is a substantial likelihood that this improper evidence may have prejudiced the jury against Steed, his estate and his parents. The court's admission of the evidence was thus harmful error.

We disagree with RaceTrac's argument, and the trial court's ruling, that the evidence of Steed's alleged drug and alcohol use on other occasions is relevant to the issue of damages because such use will affect his life expectancy. In some cases a person's long-term drug or alcohol abuse may affect his or her life expectancy. But the anecdotal evidence relied on by RaceTrac was inadequate to prove the effect of drugs or alcohol on the 18-year-old Steed's potential earning capacity and life expectancy. RaceTrac did not document with any degree of reliability the exact type, frequency and duration of the alleged drug and alcohol use. Additionally, the record before us contains no expert testimony about the effect of drugs and alcohol on Steed's potential

life expectancy and earning capacity. Instead, RaceTrac was allowed to rely on anecdotal evidence of instances of drug and alcohol use by Steed.

The evidence, while perhaps showing that Steed had engaged in such conduct, does not provide any indication as to whether the conduct was fixed and uniform so as to be habitual. And unlike habitual conduct, evidence of a party's character for performing certain acts is not admissible. *Battle v. Kovalski*, 202 Ga. App. 471, 472-473 (2) (414 SE2d 700) (1992). RaceTrac's character evidence, without more, is not probative of life expectancy or earning capacity, and any reasoning that the anecdotes tend to show a shorter life expectancy or lower earning capacity is completely speculative.

"Moreover, even if the evidence was relevant to the issue of damages, the proper procedure to avoid prejudice to the plaintiff on the issue of liability is a separate trial on the issue of damages after liability has been decided. [Cit.]" *Leo*, supra at 323. Here, the trial court refused the motion of Taylor and the Steeds to bifurcate the trial into liability and damages phases. Instead, the court allowed RaceTrac to introduce the improper evidence of Steed's character and prior conduct throughout the trial as the jury heard evidence on both liability and damages. The better practice would have been to bifurcate the trial. See generally *Whitley v. Gwinnett County*, 221 Ga. App. 18, 19-20 (2) (470 SE2d 724) (1996).

Instead, the only step the court took to limit the prejudicial impact of the evidence was in the final jury charge when the court stated that the evidence concerning drug and alcohol use and the propensity to drive fast on other occasions was to be considered in determining the value of Steed's life and not in deciding liability. This single charge was insufficient to undo the harm of the improper evidence. As discussed above, the evidence of drug and alcohol use, not to mention the evidence of Steed's purported tendency to drive fast on other occasions, was irrelevant to the issue of damages. Moreover, even if the evidence had been relevant to that issue, it is unlikely the court's charge actually limited the jury's consideration of the evidence to damages. Rather, there is a substantial likelihood that the jury considered the evidence in determining liability.

Under these circumstances, the erroneous admission of the irrelevant and prejudicial evidence of Steed's character and conduct on other occasions mandates that there be a new trial without the improper evidence. The judgment of the lower court is therefore reversed. See *Leo*, supra; *Garner v. Victory Express*, 214 Ga. App. 652, 653 (448 SE2d 719) (1994).

2. Taylor and the Steeds contend that the court erred by excluding Telenko's statement to an emergency room nurse that he consumed six beers during the evening before the accident. Taylor and

the Steeds are correct in noting that the statement, though hearsay, is admissible under the hearsay exception allowing a patient's statements made for purposes of medical diagnosis or treatment. See OCGA § 24-3-4. Moreover, the statement is relevant because it contradicts Telenko's trial testimony that he drank only two or three beers. See OCGA § 24-9-83.

However, contrary to Taylor and the Steeds' claim of error, the trial court did not exclude proper evidence of the statement. The trial court expressly told Taylor and the Steeds that if they called the nurse to whom the statement was made she could testify about it. What the court did not allow was the deposition testimony of a doctor reading the nurse's written notes that Telenko had made such a statement. The court correctly refused to allow this triple hearsay regarding the alleged statement. See *Highsmith v. Fillingim*, 171 Ga. App. 548, 549 (320 SE2d 391) (1984).

3. Taylor and the Steeds contend the trial court erroneously charged the jury on assumption of risk, which is a valid defense only in a negligence action, and not in an intentional tort case such as this one. See *McEachern v. Muldovan*, 234 Ga. App. 152, 156-157 (2) (b) (505 SE2d 495) (1998). They argue that the instant case involves an intentional tort because OCGA § 51-1-40 (b) requires them to prove that RaceTrac wilfully and knowingly sold beer to the underage Telenko.

While it is true that under OCGA § 51-1-40 Taylor and the Steeds must show RaceTrac's wilful and knowing sale of beer to Telenko, they must also show that Telenko was intoxicated from that beer and that he acted negligently. A person's potential liability for the negligent acts of a third party to whom they sell alcohol is set forth in OCGA § 51-1-40. See *Griffin Motel Co. v. Strickland*, 223 Ga. App. 812, 813-814 (479 SE2d 401) (1996); *Perryman v. Lufran, Inc.*, 209 Ga. App. 654, 655 (434 SE2d 112) (1993), disapproved on other grounds, *Riley v. H & H Operations*, 263 Ga. 652, 655 (436 SE2d 659) (1993). It is the negligence of the third party Telenko, not RaceTrac's alleged wilful and knowing sale of beer, to which the assumption of risk doctrine applies.

RaceTrac properly asserted as a defense that if Steed was not driving, he assumed the risk of riding in a car with the obviously intoxicated Telenko. See *Brown v. Mobley*, 227 Ga. App. 140, 143 (488 SE2d 710) (1997) (Smith, J., concurring specially). Because there is some evidence in the record to support such a defense, the court's jury charge on assumption of the risk was appropriate. See generally *Deere & Co. v. Brooks*, 250 Ga. 517, 519 (3) (299 SE2d 704) (1983).

*Judgment reversed. McMurray, P. J., concurs. Andrews, J., concurs specially.*

ANDREWS, Judge, concurring specially.

I disagree with the majority's conclusion that the evidence was irrelevant on the element of damages; however, I agree the evidence could have prejudiced the jury's decision on the issue of liability. Therefore, I would hold that the trial court erred in not granting the plaintiffs' motion to bifurcate the trial on the issues of liability and damages.

"The 'full value of the life of the decedent' consists of two elements, the economic value of the deceased's normal life expectancy and the intangible element incapable of exact proof." *Miller v. Jenkins*, 201 Ga. App. 825, 826 (412 SE2d 555) (1991). This intangible element of loss is considered from the standpoint of the deceased. In other words, the deceased's loss of his relationship with the plaintiffs and others and the associated factors such as the society, advice, counsel, and companionship with the plaintiffs and others are to be compensated by the jury based on these relationships. Wilburn, Ga. Law of Damages § 37-6, 331 (4th ed.). Thus, "[t]he plaintiff[s] and others can testify about the relationship [with the plaintiffs] in general or in specific terms so that the jury may determine what intangibles were lost by the deceased in the destructions of such relationship(s)." Id.

In determining what evidence is admissible on the intangible value of the decedent's life, the law affords those witnesses testifying a wide latitude "so that the jury may consider every fact and circumstance that would throw light upon the value of the decedent's life." Overby & Butler, What's A Human Life Really Worth? Recovering Damages For Decedents' Non-Economic Losses in Georgia Wrongful Death Actions, 7 Ga. State Univ. L. Rev. 439, 454 (1991), citing *Pollard v. Boatwright*, 57 Ga. App. 565 (196 SE 215) (1938).

In this case, the plaintiffs introduced evidence that Steed was "loving" and "friendly," and that he had "charisma," loved sports and was good in art. They also introduced into evidence a Shamrock High School football program dedicated to Steed, a videotape of Steed's years in high school, and photo albums from 1973, just after Steed was born, to just before he was killed. As a result, the trial court found the plaintiffs had opened the door to RaceTrac's introduction of evidence showing that Steed routinely used drugs and drank to excess.

The court allowed RaceTrac to question Telenko about Steed's propensity to drive fast, not necessarily obeying traffic laws, and using LSD and marijuana. There was also testimony from another friend of Steed's that they were in a group which got together every day and "would proceed to figure out how we were going to get intoxicated for the rest of the day." The witness also said that the group "did a lot of acid, drank a lot of beer, smoked a lot of pot."

This witness further testified that Steed engaged in risky behavior, i.e., "driving on five hits of acid and two joints and ten beers." She said that Steed had a bad temper, was rowdy and aggressive.

The majority opinion analyzes this evidence of Steed's behavior only from the standpoint of how it related to Steed's potential life expectancy and earning capacity and ignores the issues of relevance as to the intangible value of Steed's life and whether the plaintiffs opened the door to this testimony when they introduced their character evidence. Although the law in Georgia is not well developed on the issue of what is relevant evidence on the intangible value of life, if the plaintiff is allowed to introduce evidence of the deceased's positive relationships and interests, then it follows that, as the trial court stated in this case, the plaintiffs have opened the door to evidence tending to show the negative aspects of the decedent's relationships and interests. Therefore, *Leo v. Williams*, 207 Ga. App. 321 (428 SE2d 108) (1993) cited by the majority as authority for its holding is not applicable because that case does not involve testimony on the intangible value of a decedent's life.

There is always a danger that evidence admissible for one purpose but not for another will prejudice the jury in reaching its decision on that other issue. This is such a case. Therefore, in cases of this type, the trial court must consider seriously the danger inherent in not bifurcating the trial as to liability and damages. Here, because the evidence concerning Steed's drug use and drinking and driving was relevant in response to evidence introduced by plaintiffs on the intangible aspects of the value of Steed's life, and yet was inherently prejudicial on the issue of liability, the trial court erred in denying the plaintiffs' motion to bifurcate the trial. See *Chupp v. Henderson*, 134 Ga. App. 808, 812 (216 SE2d 366) (1975) (trial court erred in denying motion to bifurcate in auto accident case because evidence of driver's propensity for careless and reckless driving, while essential to claim for punitive damages, was irrelevant and prejudicial to claim for compensatory damages).[1] See also *Cincinnati Ins. Co. v. Reybitz*, 205 Ga. App. 174 (421 SE2d 767) (1992) (trial court erred in denying motion to bifurcate because evidence of no-fault insurance was inherently prejudicial on the issue of liability).

DECIDED JUNE 10, 1999 —

RECONSIDERATION DENIED JUNE 30, 1999 — CERT. APPLIED FOR.

*Phears & Moldovan, H. Wayne Phears, Richard E. Harris*, for appellants.

---

[1] OCGA § 51-12-5.1 (d) now requires bifurcated trials on the issue of punitive damages.

*Newman, Sapp & Davis, Alan L. Newman, Michele L. Davis*, for appellees.