### 60672. BEST CONCRETE PRODUCTS COMPANY v. MEDUSA CORPORATION.

BIRDSONG, Judge.

Suit on account. Medusa Corporation is a manufacturer of bulk cement products. Since at least 1975, Medusa sold grey and white cement by truck and freight car load lots to Best Concrete Products Co., a producer of concrete blocks, and poured cement. While the facts are disputed, the trier of fact (in this case the trial court) was warranted in concluding that commencing in June, 1977, Best became delinquent in its account with Medusa. In May, 1978, the credit officer of Medusa entered into discussions with the bookkeeper of Best (representing Best by the direction of the principal executive officer of Best) to reconcile the amount of the indebtedness. After two days of examination of each delinquent voucher, it was concluded that the indebtedness was approximately $146,000, subject to the possibility that about $2,000 in rebates may not have been properly credited to Best's account. (Though it is disputed, there was evidence that thereafter this was credited to existing or new business.) At the end of the reconciliation by Medusa's agent and the bookkeeper, the principal operating officer of Best was advised of the amount of the outstanding indebtedness. It appears that an agreement was reached that a one-time payment of about $11,000 would be paid to bring the cement purchases for all of 1978 up to date, continuing current payments would be made as they became due for new 1978 purchases after the date of the

reconciliation conference by payments of $10,000 per month, any surpluses to apply to the past due indebtedness accrued from June, 1977 for the purpose of bringing the account to a current status. The $11,000 was never paid and by December, 1978, the indebtedness was asserted by Medusa still to be in the amount of $140,819.27. Because the indebtedness had not been substantially reduced as contemplated by the May agreement, Medusa refused further shipment of bulk cement to Best and filed suit on the account. It should be noted here that after the May reconciliation and discussion with Best's principal operating officer, Medusa prepared and mailed to Best a multiple page letter setting forth the amount of indebtedness and detailing the agreement. This letter was accepted by Best without objection or complaint until suit was filed by Medusa many months later. After suit was filed Best filed counterclaims alleging that Medusa had violated the Robinson-Patman Act (15 USC § 13 et seq.), discriminating between customers by charging different prices to different customers for the same product. In two other counterclaims, Best complained that by refusing to continue to supply it with bulk cement, Medusa caused financial damage by forcing work stoppages and also forcing Best to purchase cement at higher prices from other sources. Best sought discovery of price lists prepared by Medusa for its customers for the years 1975 through 1979. Medusa moved to dismiss the count of Best's counterclaim dealing with the discriminatory pricing in violation of the Robinson-Patman Act on the ground that the state court did not have jurisdiction over the alleged federal violation. The trial court dismissed that portion of Best's counterclaim. Thereafter Medusa moved to protect its records from discovery of any evidence dealing with differentials in pricing between its various Georgia customers on the grounds that the requests for discovery were overly broad and were irrelevant to a determination and settlement of a suit on a stated account. The trial court denied the discovery of any evidence dealing with prices to other customers. When at the trial, Best attempted to introduce evidence from other dealers in cement products who purchased bulk cement from Medusa during the period from 1975 to 1979, the trial court consistently denied the admission of such evidence. The trial court concluded that there was an agreement between Best and Medusa that the outstanding indebtedness was $146,000 as of June, 1978, which indebtedness had been reduced to $140,819.27 as of the end of December, 1978. The trial court found that Best was entitled to certain setoffs amounting to approximately $7,500. The court entered judgment for Medusa in the amount of $133,391.81 principal plus $22,102.84 interest for the period from the beginning of the indebtedness in June, 1977 until the time of the

agreement in May, 1978, all subject to 7% interest from the time of the agreement until paid. The trial court granted judgment in favor of Medusa on Best's counterclaims and assessed costs against Best. Best brings this appeal enumerating 20 alleged errors. *Held:*

1. From the beginning of this litigation, the heart of the issue between Medusa and Best has been whether there was an agreement entered into between them as to what was the amount of the indebtedness. Best has never denied that there is an indebtedness of some amount. The principal operating officer of Best admitted as a witness that the credit officer from Medusa had come to Best's company offices and conferred with the bookkeeper, then with the company officer, and that it was agreed that the accounts maintained by Medusa in the regular course of Medusa's business showed as of May, 1978 an outstanding indebtedness of $146,000, subject to disputed set offs. It is not contested that the understanding would be reduced to writing concerning the payment of future purchases, the liquidation of 1978 purchases (in one lump sum of $11,000) and that monthly installments of $10,000 would be made as payment for current purchases and any excess to liquidate the older indebtedness of 1977. It also was admitted that this letter was received by Best a few weeks after the May 13, 1978 conference and that Best never disputed any of the contents of that letter until after this litigation had been filed. The only dispute related to certain freight charges (where Medusa charged the standard freight charge but Best had in fact accepted delivery at Medusa's Georgia plant) and certain discounts which were in dispute. There was also a dispute concerning vouchers which indicated the shipment of grey cement while related billings for those shipments charged for white cement which carried a much higher cost price. Best maintained that it was due rebate for these grey-white overcharges whereas Medusa maintained that on these vouchers they simply had used preprinted forms showing grey cement and when shipping white cement, the word "grey" had been stricken and the word "white" inserted. This issue was presented to the trier of fact for resolution and resolved against Best.

Best contends that the evidence does not support the court's conclusion that the evidence established an "account stated." While an agreement as to amount and a promise to pay are essential elements of an account stated, ". . . an account may become stated even without express agreement. If an account is rendered to the debtor and he fails to object to it, a jury 'might be authorized to infer that the failure of the party to raise objection was an implied agreement on his part that the account was correct'. . . . [Cit.]" *Lawson v. Dixie Feed &c. Co.,* 112 Ga. App. 562, 564 (2) (145 SE2d 820). It is undisputed that Best received a written statement of the

account and the understanding of the parties as to the liquidation of the account. It also is undisputed that Best failed to object to the statement of the account or even to respond at all. See *Reisman v. Martori, Meyer, Hendricks & Victor,* 155 Ga. App. 551, 555 (271 SE2d 685). The trial court was warranted in its conclusion that there was an account stated and past due.

Best also argued, in effect, that there was no agreement because of the continuing dispute over rebate of the unearned freight charges, the charge for white cement where grey cement had been shipped and the uncredited discounts. This misses the point of the open account. Best ordered cement usually by telephone or orally from a salesman. The cement was shipped and the price for that quantity reflected on the shipping document. Thereafter, at the end of each month a consolidated billing for all shipments was presented to the customer, Best. We have already held that these delinquent billings were presented to and discussed with Best and Best agreed that the amount of the debt was $146,000 as of May 13, 1978. Thus we are dealing with an acknowledged indebtedness entered into in an arm's length relationship between a willing purchaser and competitive seller. The discounts, freight charges or mistakes in billing, if any, did not affect the basic fact of the admitted indebtedness, only the actual, ultimate correct amount. Medusa forwarded its statement of the reconciled amount to Best in May, 1978 and the statement of account was not disputed by Best. Best's argument goes only to adjustments to the account and not to the agreement of a stated account.

2. Appellant Best presents numerous related enumerations complaining that the trial court denied Best any right of discovery of the price lists maintained by Medusa for the years 1975-1979; or the amount of trade discounts given to Best's Georgia competitors. In the first place, Medusa denied that it had retained copies of price lists for the past years and thus had no price lists to produce. Secondly, the trial court had ruled any evidence relating to discriminatory pricing or discounting in violation of the Robinson-Patman Act as not within the jurisdiction of a state forum. In this, the trial court was correct. See *Vaughn & Co. v. Saul,* 143 Ga. App. 74, 86 (237 SE2d 622). The trial court cannot order produced what is not in the hands of the adverse party nor assume jurisdiction of that which has been preempted by the federal government.

The only real issue was whether Best was obligated to Medusa on an open account and that was established by competent evidence. Thus, it was not relevant to the issues before the court what Medusa charged other customers for cement. Questions of relevancy are for the court. *Hotchkiss v. Newton,* 10 Ga. 560. The trial court did not err in refusing to allow discovery or admission of evidence dealing with

Medusa's dealings with other Georgia customers simply because they were in a related cement business.

3. In its third enumeration of error, Best asserts error wherein the trial court allowed the appellee Medusa to change the party plaintiff name from Medusa Cement Company to Medusa Corporation. This enumeration is without merit. The name change was made with the consent of the court and was clearly shown to be the technical correction of the name of the party plaintiff. No new party was added, no party status was changed. Under the circumstances, the trial court acted within its discretion and we find no abuse or error. *C & S Land &c. Corp. v. Yarbrough,* 153 Ga. App. 644, 648-649 (266 SE2d 508).

4. Best complains that any admissions by an employee (the bookkeeper) as opposed to an officer of the company was hearsay and not binding on the company. This argument ignores the evidence. The bookkeeper was designated by the chief executive officer of Best to work with Medusa's credit officer in order to verify the correct amount of the indebtedness. Nothing she said or admitted was offered or received into evidence. An examination of the billings and vouchers led Medusa's representative (who did testify) to state that the amount of the indebtedness was $146,000. This was presented to and discussed with Best's chief executive officer and subsequently reduced to writing. No hearsay or inadmissible admissions are involved, only the fact and amount of indebtedness. This enumeration is patently without merit.

5. Best also argues that because the indebtedness allegedly extended to purchases made during the period from June, 1977 until December, 1978, the trial court erred in causing interest to apply from January 1, 1978, a date that preceded some of the purchases. The facts show that the amount of each purchase was due by the last day. of the month following the month invoiced. The past due indebtedness of $140,819.27 by December 31, 1977 was $135,596.67. Only $5,222.60 was billed in 1978, all in December, 1978. An amount of $232.82 was billed in December, 1977. Thus approximately $135,360 was subject to interest based upon purchases made prior to January, 1978, i. e., the trial court could have assessed interest prior to January, 1978, on the majority of the indebtedness rather than delaying the interest until January, 1978. While it may have been error for the trial court to assess interest on the approximately $5,500 not immediately due on January 1, 1978, the utilization of that date by the trial court worked a substantial benefit to appellant Best as to all the vouchers due prior to January 1, 1978. It is an old and sound, rule that error to be reversible must be harmful. *Dill v. State,* 222 Ga. 793 (1) (152 SE2d 741); *Burger Chef Systems v. Newton,* 126 Ga. App.

636, 639 (191 SE2d 479). Thus when a plaintiff in error brings a case here, he must show error which has hurt him. This court is not an expounder of theoretical law but it administers practical law, and corrects only such errors as have practically wronged the complaining party. *Brown v. City of Atlanta,* 66 Ga. 71.

Related to this enumeration is the complaint that the indebtedness was not liquidated so as to authorize interest. As we indicated in the beginning of this decision, we agree with the trial court that the indebtedness is a stated account. The trial court considered the evidence submitted by Best as to the asserted rebates and credits and credited Best with what the court concluded to be properly creditable. That determination is not arbitrary or unreasonable and is supported by the evidence. We will not disturb the findings by the trial court acting in its capacity as a fact finder. *Williams v. Mathis,* 237 Ga. 305, 306 (227 SE2d 378).

6. In each of its remaining enumerations of error, Best merely states how erroneous it was for the trial court to act in the particular way it acted in each of the instances of which complaint is made. A mere statement of what occurred during the trial, and the contentions of the appellant, does not constitute an argument in support of such contentions. Argument is defined as a reason given in proof or rebuttal, or a coherent series of reasons offered. Webster's New College Dictionary (1976). The central element is reason. The function of argument in a brief is to supply the reason why the court should support the contentions of that party. The failure to support the enumerated errors by citation of authority or argument in the brief, constitutes an abandonment of such enumerated errors. *Ramey v. State,* 238 Ga. 111, 114 (7) (230 SE2d 891); *Haskins v. Jones,* 142 Ga. App. 153 (1) (235 SE2d 630). Nevertheless, we have examined each of the remaining enumerations and found each to be without merit.

*Judgment affirmed. Deen, P. J., and Sognier, J., concur.*

DECIDED JANUARY 13, 1981.

*Floyd E. Siefferman, Jr.,* for appellant.
*Wayne H. Phears,* for appellee.