A89A1964. STUDEBAKER'S OF SAVANNAH, INC. v. TIBBS.
A89A1965. CARTER v. TIBBS.
(392 SE2d 908)

McMURRAY, Presiding Judge.

This is the second appearance of this case before this Court wherein Carolyn Tibbs brought suit against Janice Carter and Studebaker's of Savannah, Inc. seeking damages for personal injuries and property damages incurred in an automobile collision between her and Janice Carter. Following the decision in *Tibbs v. Studebaker's of Savannah*, 184 Ga. App. 642 (362 SE2d 377) (*Tibbs I*) (cert. denied November 24, 1987), the case was returned to the State Court of Chatham County, where a jury returned a verdict in favor of plaintiff and against defendants Carter and Studebaker's of Savannah, Inc. ("Studebaker's") jointly and severally, in the amount of $250,000. In Case No. A89A1964 Studebaker's appeals from the judgment which followed, while Ms. Carter appeals in Case No. A89A1965. *Held*:

1. In appellant Carter's third enumeration and appellant Studebaker's fifth enumeration, appellants contend that the trial court erred in allowing evidence of a blood alcohol test performed on appellant Carter to be admitted when the test was not performed according to the requirements of OCGA § 40-6-392.

The records and the transcript of the proceedings in the cases sub judice contain no evidence showing appellant Carter was charged with any traffic or criminal offense. There was no evidence showing the "blood alcohol test" was performed at the request or direction of a law enforcement officer or that it was administered for the purpose of determining whether appellant Carter violated OCGA § 40-6-391.

The evidence at trial disclosed that the "blood alcohol test" upon appellant Carter was requested by the emergency room physician at the hospital where appellant Carter was taken following the collision. The test was performed pursuant to the medical treatment of appel-

lant Carter and the results recorded in the usual and regular course of hospital business.

Appellants, by motion in limine, sought to exclude evidence concerning the blood test. Following a hearing on appellants' motion, the trial court ruled that the "actual numbers" representing the test results could not be mentioned. However, the examining and treating physician (who also performed surgery upon appellant Carter that night) could testify utilizing the test results. Here the trial court did not permit the numerical reading of the amount of alcohol in the blood of appellant Carter to be disclosed to the jury. The trial court did permit the medical expert (the examining and treating physician) to give his expert opinion as to appellant Carter's condition based on his observation of her and consideration of the hospital business records. Under the particular facts and circumstances of the cases sub judice and under the authority of *Bynum v. Standard &c. Co.*, 157 Ga. App. 819, 820 (2) (278 SE2d 669), the trial court did not err in permitting the examining and treating physician to testify utilizing the hospital business records as well as from the physician's observation of appellant Carter during examination at the hospital. See *McCall v. Parker*, 177 Ga. App. 774 (341 SE2d 303).

The examining and treating physician testified that appellant Carter "in layman's terms . . . had a fracture of the leg between the knee and the ankle on the right side, with the bone sticking out through the skin. On the left side, she had a fracture between the knee and the ankle and the bone was in multiple pieces but was not out through the skin." The physician further testified that, additionally, appellant Carter "had a respiratory distress syndrome and acute alcohol intoxication." In response to questions on direct examination, he further testified, without stating the numerical reading of the amount of alcohol in the blood of appellant Carter reflected in the hospital records, as follows: "Q. Okay, Doctor, without in any way stating what the numbers were on that result as far as the blood alcohol test result was concerned, did the results of the blood alcohol test which you saw contribute to your diagnosis of acute alcohol intoxication? A. Yes. Q. To what extent did the results of that test contribute to that diagnosis? A. That fact was the basis upon which I made the diagnosis. Q. Okay, did the results of the blood alcohol test in fact confirm the diagnosis of acute alcohol intoxication, along with your observations? A. Yes. Q. Did the results of the blood alcohol test in fact support your diagnosis of acute alcohol intoxication? A. Yes."

In the cases sub judice, the examining and treating physician's expert opinion was not only based on the hospital's business records but also upon his observation and examination of appellant Carter in the emergency room.

We find no error in the trial court's allowing the admission of this

evidence.

2. Appellant Studebaker's contends in its fourth enumeration that the trial court "erred in instructing the jury as follows: 'Whether or not there is a duty upon a drinking establishment to provide security for patrons and to keep an eye out for noticeably intoxicated persons leaving the establishment and to make sure that noticeably intoxicated persons do not drive, once a company or person undertakes such duty, it is required to perform that task in a non-negligent manner." Appellant Studebaker's asserts that "even if Studebaker's assumes the duty of attempting to not let intoxicated persons drive, it is a duty owed to the customer [appellant Carter] and not to a third party and therefore a breach of it could not be asserted by Tibbs [appellee], a third party."

The trial court charged "[o]ne who provides alcoholic beverages to a noticeably intoxicated person, knowing that that person will soon be driving a vehicle, may be liable for a third person's injuries caused by the negligence of the intoxicated driver, if the alcohol was a proximate cause of the injuries.

"Whether or not there is a duty upon a drinking establishment to provide security for patrons and to keep an eye out for noticeably intoxicated persons leaving the establishment and to make sure that noticeably intoxicated persons do not drive, once a company or person undertakes such duty, it is required to perform that task in a non-negligent manner."

Appellant Carter's son (an employee of appellant Studebaker's) testified he recalled seeing his mother when she arrived at appellant Studebaker's; that he spoke to her when she arrived and that he did not notice anything unusual about the way she was acting when she arrived. He further testified he saw her occasionally throughout the evening while she was at appellant Studebaker's; that when she left he walked her out to her car; that his mother did not appear to be intoxicated and *that had she been he would not have allowed her to get in a car and drive off.*

In response to questions on direct examination the off-duty police officer, employed by appellant Studebaker's, testified as follows: "Q. Now, on the night of October 11th, 1985, do you remember Mrs. Carter being in Studebaker's? A. Yes, I do. Q. Can you tell us why you remember her leaving Studebaker's? A. It was close to the time when I was coming to work. I come to work at nine o'clock in the evening. I had just arrived, hadn't been there for a great length of time. I can't tell you whether it would have been five minutes or fifteen minutes, but I'd just arrived. Mrs. Carter was leaving Studebaker's and her son also works there and he came up and introduced his mother to me. Q. Did you speak to Mrs. Carter? A. Yes, I did. We had a short conversation. Q. Were you able to observe the manner in

which she was speaking? A. Yes, I did. Q. Anything about the manner in which she was speaking lead you to believe she was intoxicated? A. No, I did not. Q. What about — were you able to observe the manner in which she walked? A. Yes. I was still outside near the front door when she left the premises and she walked normally. Q. Okay, so she didn't have any type of intoxicated walk about her; is that correct? A. No. Q. Had Mrs. Carter appeared to you to be intoxicated, what would you have done? A. I would have tried to find another ride for her, other than letting herself — letting her drive herself home. Q. If you could not have found another ride for her, what would you have done? A. If it hadn't been a ride there at Studebaker's itself, being a friend of the family or whatever, I would have called a cab for her. Q. *And have you done that in the past? A. Numerous times. Q. And that's the standard procedure? A. Yes, it is.*" (Emphasis supplied.)

The Supreme Court of Georgia, in *Sutter v. Hutchings*, 254 Ga. 194, 195 (1), 197 (327 SE2d 716) (1985), held "[a] person owes to others a duty not to subject them to an unreasonable risk of harm. [Cit.] More specifically, OCGA § 3-3-22 provides that 'no alcoholic beverage shall be sold . . . given, provided, or furnished to any person who is in a state of noticeable intoxication,' and OCGA § 3-3-23 (a) (1) provides that 'No person knowingly, by himself or through another, shall furnish (or) cause to be furnished . . . any alcoholic beverage to any person under 19 years of age' except for medical or religious purposes, or in the home with parental consent.

"It could be argued that the duty or obligation created by these Code sections runs only to persons noticeably intoxicated or under 19, and not to others. However, in view of risks involved and the General Assembly's efforts to control drunk driving for the protection not only of those drivers but others on the highways, we conclude that these statutory duties protect third parties as well as those noticeably intoxicated and under 19. OCGA §§ 3-3-22; 3-3-23, supra, provide the duty, not the cause of action. However, OCGA § 51-1-6 provides: 'When the law requires a person . . . to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby.' We therefore find that the defendant hostess and her daughter owed a duty to those using the highways not to subject them to an unreasonable risk of harm by furnishing alcohol to a person under 19 who was noticeably intoxicated and who these defendants knew would soon be driving his car . . . [T]he duty upon the provider of alcohol is not merely to prevent the intoxicated driver from driving. The duty arises earlier. It is to stop serving alcohol to the driver who is noticeably intoxicated (or share the intoxicated driver's liability to injured third persons)."

We hold that the trial court did not err in giving the contended

erroneous charge as this fragmented charge, when considered with that portion of the trial court's charge immediately preceding, as set out herein, was an accurate statement of the law and adjusted to the evidence. See *Sutter v. Hutchings*, 254 Ga. 194, 195 (1), 197, supra.

3. In its third enumeration, appellant Studebaker's contends the trial court erred in allowing the issue of whether this appellant provided alcohol to a noticeably intoxicated Janice Carter to be decided by the jury. Additionally, in its first and second enumerations, appellant Studebaker's contends there is no evidence to support the jury's verdict finding it liable in damages to appellee for its serving of alcohol to the "noticeably intoxicated" appellant Carter in violation of OCGA § 3-3-22 as interpreted by the appellate courts in *Sutter v. Hutchings*, 254 Ga. 194, 195 (1), 197, supra, and the earlier appeal in *Tibbs I*. Appellant Studebaker's argues the only evidence adduced at trial regarding appellant Carter's condition in its establishment was from two of Studebaker's employees, one of whom was appellant Carter's son and the other an off-duty police officer. Both witnesses testified that appellant Carter was not "noticeably intoxicated" when she *left* appellant Studebaker's bar. Appellant Studebaker's asserts the jury could not have inferred from this direct evidence that appellant Carter was "noticeably intoxicated" when last *served* alcohol by appellant Studebaker's.

" 'Direct and positive testimony, as distinguished from testimony circumstantial, opinionative, or actually negative in character, which (was) given by an unimpeached witness as to the existence of a fact apparently within his own knowledge, which (was) not in itself incredible, impossible, or inherently improbable, and which (was) not contradicted directly or by proof of facts or circumstances that could be taken as incompatible with such testimony, can not be arbitrarily rejected by a jury or other trier of the facts upon the mere surmise that it perhaps might not be in accord with the truth.' [Cit.] 'Circumstantial evidence from which the existence of a fact might be inferred, but which did not demand a finding for the plaintiff to that effect, will not support a verdict, when by positive and uncontradicted testimony of unimpeached witnesses, which was perfectly consistent with the circumstantial evidence relied on by the plaintiff, it was affirmatively shown that no such fact existed.' [Cit.]" *Westinghouse Elec. Corp. v. Rider*, 168 Ga. App. 136 (1), 137 (308 SE2d 378) (1983).

In the cases sub judice, however, there was evidence from which the jury reasonably could have found that the testimony of appellant Carter's son and his co-worker, the off-duty officer, could be discredited. There was direct evidence that the only alcohol appellant Carter had imbibed was at appellant Studebaker's establishment and that the amount she had consumed there required her subsequent treatment for "acute alcohol intoxication." There was direct evidence that

she imbibed the alcohol over an approxiately 2-½ hour stay at the appellant Studebaker's place of business and, as she did so, that she had last eaten around 8:00 p.m. the night before (more than 24 hours since she had had anything to eat). Appellant Carter testified at trial, so the jury had an opportunity to assess her height, weight and build.

Construing the evidence to uphold the jury's verdict, see *Kroger Co. v. Green*, 190 Ga. App. 318 (1) (378 SE2d 905) (1989), the jury reasonably could have found that the foregoing proven facts were incompatible with the testimony of appellant Studebaker's employees and could have concluded, as the verdict indicates the jury so found, that under these curcumstances, appellant Carter must have appeared "noticeably intoxicated" at the time she was served her final scotch and soda. Although appellant Studebaker's argues that the jury could not disregard its employees' testimony, " '[i]n a case where the direct evidence is not all one way, or where there are proved facts and circumstances which could be taken as inconsistent with the direct positive testimony, the jury may always consider the relationship and the feeling of the witnesses toward the parties, as well as the facts and circumstances of the case, including the witnesses' manner of testifying, their intelligence and number.' [Cit.] In the [cases sub judice], the jury reasonably could have found that [the testimony of appellant Carter's son and the off-duty officer employed by appellant Studebaker's had been] impeached. ' "Questions as to creditability and preponderance address themselves to the trier of facts. (Cits.) On appeal, the appellate tribunal does not determine the credibility of witnesses or the preponderance of the evidence. The appellate tribunal utilizes the 'any evidence' test, a test not available to the trier of facts in deciding disputed factual issues." [Cit.]' [Cit.]" *Westinghouse Elec. Corp. v. Rider*, 168 Ga. App. 136 (1), 137, supra.

The trial court did not err in denying appellant Studebaker's motion for directed verdict and motion for a judgment notwithstanding the verdict or in the alternative for a new trial.

4. Appellant Carter enumerates as error in her first enumeration, the refusal of the trial court to give her written requests to charge on the law of comparative negligence.

We find no evidence of any negligence on the part of the appellee. "The burden was upon the [appellant Carter] to prove that [her] negligence could have been discovered and avoided by [appellee]. [Appellant Carter] having failed to meet this burden, the trial court did not err in refusing to charge as to comparative negligence. *Moore v. Price*, 158 Ga. App. 566, 568-570 (2) (281 SE2d 269)." *Nelson & Budd v. Brunson*, 173 Ga. App. 856, 857 (3) (328 SE2d 746). See *Glenn McClendon Trucking Co. v. Williams*, 183 Ga. App. 508, 511 (4) (359 SE2d 351).

5. In her sixth enumeration, appellant Carter contends the "Trial

Court erred in allowing television cameras and crews in the open courtroom, in full view of the jury, without advance notice to the Appellant." Appellant Carter argues in her brief that although "there is no case law on point on the subject of television coverage, common sense shows that a jury would notice television crews in the courtroom and would think the case must be of some importance. It was extremely difficult for Appellant to argue this was simply an ordinary accident case, when the news reporters and television crew members were bustling around the courtroom throughout the trial. Appellant could not receive a fair, impartial trial based on the evidence alone under these circumstances." To warrant reversal, the alleged error must be harmful and the appellant Carter must show error which has hurt her and this she has failed to accomplish. See *Dill v. State*, 222 Ga. 793 (1), 794 (152 SE2d 741); *Best Concrete &c. Co. v. Medusa Corp.*, 157 Ga. App. 97, 101 (5) (276 SE2d 147).

6. In appellant Carter's second, fourth and fifth enumerations and in appellant Studebaker's sixth enumeration, appellants complain of the trial court's allowing contended improper conduct and improper remarks of appellee's counsel during closing argument. We view appellee's counsel's comments and actions as well within the wide latitude permitted to counsel to argue every valid presumption and inference and deduction which may be drawn from the evidence however illogical they may seem to the opposing party. See *Leutner v. State*, 235 Ga. 77, 82 (7) (218 SE2d 820); *Miller v. Coleman*, 213 Ga. 125, 129 (6), 130 (97 SE2d 313); *Wright v. Wright*, 170 Ga. App. 652, 654 (3) (317 SE2d 888); *Minor v. State*, 143 Ga. App. 457 (2) (238 SE2d 582).

*Judgments affirmed. Beasley, J., concurs. Carley, C. J., concurs specially.*

CARLEY, Chief Judge, concurring specially.

I cannot agree with Division 3 of the majority opinion. I find absolutely *no* evidence whatsoever to authorize a finding that appellant-defendant Carter was noticeably intoxicated when she was *served the last drink* at appellant-defendant Studebaker's establishment. The only evidence of her intoxication relates to points in time which were *after* she had been served the last drink, and there is considerable doubt whether that evidence would be sufficient to show her *noticeable* intoxication even at those later times. *Noticeable* intoxication is obviously manifested by a person's outward appearance. One may be intoxicated without being noticeably so and one may also *appear* to be noticeably intoxicated after involvement in a serious automobile collision without even being intoxicated at all.

However, even assuming that the evidence would authorize a finding of appellant Carter's *subsequent noticeable* intoxication, I

nevertheless cannot agree with the majority that that evidence would be sufficient to authorize a finding that she was noticeably intoxicated when she *had previously been served the last drink*. Certainly no presumption would arise that she was noticeably intoxicated at that earlier time. "[T]he doctrine of continuity does not include a 'presumption that a present proven status existed in the past,' but only that something which exists in the present will continue until there is proof of a change. [Cit.]" *Professional Bldg. v. Reagen*, 129 Ga. App. 183, 185 (199 SE2d 266) (1973). Noticeable intoxication "depends in part on a person's tolerance to alcohol, which varies among individuals and even within individuals." *Jones v. Toyota Motor Co.*, 243 Cal. Rptr. 611, 613 (1) (Cal. App. 1988). Accordingly, the jurors' personal experiences would have no evidentiary bearing on the question of whether appellant Carter's purported subsequent noticeable intoxication was indicative of her earlier noticeable intoxication and there is no expert medical testimony that appellant Carter's subsequent intoxication was such as to indicate that she would have been noticeably intoxicated at the time she was served the last drink. Thus, under my view of the record, her noticeable intoxication at that earlier time is mere rank speculation. Compare *Whelchel v. Laing Properties*, 190 Ga. App. 182, 184 (2) (378 SE2d 478) (1989).

I cannot, however, dissent to Division 3. In the prior appearance of this case, it was implicitly held that appellant Studebaker's owed appellee-plaintiff not only the initial duty to stop serving alcohol to a noticeably intoxicated person, but also a subsequent duty to prevent a noticeably intoxicated person from leaving its premises and that the evidence would further authorize a finding that appellant Studebaker's had breached this subsequent duty owed to her. *Tibbs v. Studebaker's of Savannah*, 184 Ga. App. 642, 644 (b) (362 SE2d 377) (1987). "The evidence introduced on the trial of the case was in every material substance identical to that which the court considered on motion for summary judgment. . . . Hence, the rule would be applicable that the rulings on a former review, whether right or wrong, are binding on this court where the evidence on the principal issues is substantially similar. [Cit.]" *Srochi v. Kamensky*, 121 Ga. App. 518, 519-520 (1) (174 SE2d 263) (1970). Since the law of the case rule would mandate a holding that the evidence in the instant case authorizes a finding of appellant Studebaker's liability for the breach of a subsequent duty to prevent appellant Carter from driving away, it necessarily follows that what I perceive to be a lack of evidentiary support for a finding of appellant Studebaker's liability for the breach of the initial duty to stop serving alcohol to appellant Carter is ultimately immaterial.

Although I am compelled to follow *Tibbs* as the established law of the case, I am not compelled to agree with its holding. In my opin-

ion, *Tibbs* is incorrect because there is *no* actionable duty on the part of the provider of alcohol to prevent his noticeably intoxicated guests from driving away from the premises. There is certainly no statute which imposes such a duty. The statutory duty is to withhold alcohol from "any person who is in a state of noticeable intoxication." OCGA § 3-3-22. Likewise, I find no authority for imposing such a duty under common law. "The traditional formula setting forth the elements of negligence are: '1. A duty, or obligation, recognized by the law, *requiring the actor to conform to a certain standard of conduct*, for the protection of others against unreasonable risks. . . . '3. A reasonable *close causal connection* between the conduct and the resulting injury. . . .' [Cits.]" (Emphasis supplied.) *Sutter v. Hutchings*, 254 Ga. 194, 196-197 (1) (327 SE2d 716) (1985). Insofar as the conduct of the *provider* of alcohol is concerned, he can certainly choose whether or not to continue to serve a guest who is *then* noticeably intoxicated. If he chooses to do so, "it is foreseeable to the provider that the consumer will drive while intoxicated and a jury would be authorized to find that it is foreseeable to the provider that the intoxicated driver may injure someone." *Sutter v. Hutchings*, supra at 198 (1). Under *Tibbs*, however, the provider of alcohol can be found liable for damages which were *not* the foreseeable consequences of his own conduct. *Tibbs* holds that the provider of alcohol to a guest who was *not* then noticeably intoxicated nevertheless has the subsequent duty to determine whether his guest may have become noticeably intoxicated and, if so, to require that that guest's conduct conform to the standard which proscribes driving in such a condition. This, in effect, requires that the provider of alcohol constantly monitor the exit to his premises and attempt to stop any of his formerly sober guests who might wish to leave after subsequently becoming noticeably intoxicated or the provider will risk being held vicariously liable for the consequences of that guest's negligent act of choosing to drive while noticeably intoxicated. It is one thing to hold that the provider of alcohol is liable for the foreseeable consequences of his own act of serving an already noticeably intoxicated guest. It is quite another to hold that the provider of alcohol is vicariously liable for the foreseeable consequences of the act of his formerly sober guest who chooses to drive away only after he has become noticeably intoxicated.

I simply cannot agree with *Tibbs* that the common law would authorize a recovery against the provider of alcohol in the latter situation. The provider of alcohol "is not liable to third persons for injuries caused by the negligence of the consumer *where the consumer was not intoxicated at the time the alcohol was furnished.* [Cit.] A person who [provides] alcohol to one who is not intoxicated is *not* charged with foreseeing that the [consumer] will consume an excessive amount of such alcohol and will drive a vehicle while under the

influence of such alcohol." (Emphasis supplied.) *Sutter v. Hutchings*, supra at 201 (Appendix.) Moreover, even if *Tibbs* were correct and liability could attach for simply allowing a formerly sober guest who has subsequently become intoxicated to drive away, I would still be compelled to find that *Tibbs* was erroneously decided insofar as it found sufficient evidence to authorize a finding of appellant Studebaker's liability under that theory. As discussed above, I do not believe that the evidence as to appellant Carter's subsequent intoxication was sufficient to show that she was noticeably intoxicated at *any* earlier time, including the time that she left appellant Studebaker's premises. Compare *Whelchel v. Laing Properties*, supra.

I also cannot agree with Division 2 of the majority opinion and believe that the charge on appellant Studebaker's gratuitous undertaking of the duty to prevent its guests from leaving the premises while noticeably intoxicated was erroneously given. Although appellant Studebaker's owed non-patrons the duty not to serve alcohol to its guests if they were then noticeably intoxicated, the duty not to endanger non-patrons by driving away from the premises only after subsequently becoming intoxicated was owed by the guests themselves. There is no evidence that it was standard procedure for appellant Studebaker's to require its guests to relinquish control over their cars or their persons, but only for it to undertake to persuade them not to drive while intoxicated. Appellant Studebaker's cannot, therefore, be found to have gratuitously undertaken performance of the actual duty owed by its guests to refrain from driving while intoxicated. "An *actor* is liable for his negligent performance if he has undertaken to perform a legal duty owed by the other to the third person *on behalf of* and *in lieu of* that other. Liability does not arise in the situation when 'one undertakes to perform functions *coordinate to* — or even *duplicative of* — activities imposed on another by a legal duty, but rather [liability does arise in] the situation in which one *actually undertakes to perform for the other the legal duty itself.'* [Cit.]" (Emphasis in original.) *Lather v. Berg*, 519 NE2d 755, 766 (8) (Ind. App. 1988). "Because [appellant Studebaker's] had no right to prevent [appellant Carter] from driving and never took control [of her car, appellant Studebaker's] cannot be held liable for failing to prevent [her] from driving." *Lather v. Berg*, supra at 767 (10). Any gratuitous undertaking merely to *reinforce* rather than actually to perform the duty that was owed by its intoxicated guests to non-patrons would not give rise to liability against appellant Studebaker's and, in my opinion, the contested charge was erroneously given.

Again, however, I cannot dissent to Division 2 because the law of the case rule prevents it. Under *Tibbs*, it is of no consequence whether appellant Studebaker's gratuitously assumed the duty to prevent its guests from leaving the premises while noticeably intoxicated

because such a duty was nevertheless owed as a matter of common law. If the duty was owed as a matter of common law, it necessarily follows that an erroneous charge which predicates appellant Studebaker's liability on the gratuitous assumption of that duty would constitute harmless error. Accordingly, I am in the anomalous position of concluding that that which I perceive to be reversible error in the instant case must be considered to be harmless as the result of the previous decision of this court, which constitutes the law of the case.

I am "in sympathy with [appellant Studebaker's] argument[s] [as to Divisions 2 and 3] but find [myself], through application of the law of the case rule, without the authority to [find reversible error] in the context of this appeal. . . . The [*Tibbs*] decision, [which I consider to be] wrong, being the law of the case, binds this court in the instant appeal. [Cit.] 'While the holding in [*Tibbs*] on its previous appearance before this court may be reviewed and overruled [by this court] in another case, as between these parties it must stand. [Cit.]' [Cit.]" *Redmond v. Blau*, 153 Ga. App. 395, 396 (265 SE2d 329) (1980). Since only the Supreme Court would be authorized to overrule *Tibbs* and find reversible error in the instant case, I must reluctantly concur in the majority's judgment of affirmance.

DECIDED MARCH 16, 1990 —
REHEARINGS DENIED MARCH 28, 1990 —

*Dana F. Braun*, for Studebaker's.
*Marshall R. Wood*, for Tibbs.
*Leesa A. Bohler*, for Carter.