## S10G1652. FLORES et al. v. EXPREZIT! STORES 98-GEORGIA, LLC et al.

### (713 SE2d 368)

THOMPSON, Justice.

We granted a writ of certiorari to the Court of Appeals in *Flores v. Exprezit! Stores 98-Georgia*, 304 Ga. App. 333 (696 SE2d 125) (2010), to determine whether Georgia's dram shop act, OCGA § 51-1-40,[1] applies when a convenience store sells closed or packaged containers of alcohol not intended for consumption on the premises to a noticeably intoxicated adult. We hold that it does and reverse the judgment of the Court of Appeals.

This case stems from a motor vehicle collision in which six people were killed and several were injured.[2] Approximately four hours before the collision, the driver of one of the vehicles, Billy Joe Grundell, drove with a passenger to a convenience store. Grundell was noticeably intoxicated when he entered the store and purchased a 12-pack of beer. Grundell and his passenger drove off and consumed the beer. Later, Grundell crossed the centerline of a highway and ran head-on into a van going the opposite way. At that time, Grundell's blood alcohol concentration was 0.181 grams per 100 milliliters, twice the legal limit.

The injured passengers brought suit under the dram shop act against the convenience store, which was owned or operated by Exprezit! Stores 98-Georgia, LLC. The trial court awarded summary judgment to Exprezit! and the Court of Appeals affirmed, holding that the dram shop act does not apply under any circumstances to the sale of closed or packaged alcoholic beverages not intended for consumption on the premises.

The dram shop act provides, in pertinent part:

> (a) The General Assembly finds and declares that the consumption of alcoholic beverages, rather than the sale or furnishing or serving of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person, except as otherwise provided in subsection (b) of this Code section.
>
> (b) A person who sells, furnishes, or serves alcoholic beverages to a person of lawful drinking age shall not

---

[1] This statute is not officially denominated as a "dram shop act," but it is commonly referred to in that manner.

[2] Like the Court of Appeals, we construe the facts in favor of the plaintiffs, the party opposing the convenience store's motion for summary judgment, *Stephens v. Stephens*, 239 Ga. 528, 530 (238 SE2d 71) (1977), and presume the evidence is sufficient to raise questions of fact under the dram shop act.

thereby become liable for injury, death, or damage caused by or resulting from the intoxication of such person, including injury or death to other persons; provided, however, a person who willfully, knowingly, and unlawfully sells, furnishes, or serves alcoholic beverages to a person who is not of lawful drinking age, knowing that such person will soon be driving a motor vehicle, or who knowingly sells, furnishes, or serves alcoholic beverages to a person who is in a state of noticeable intoxication, knowing that such person will soon be driving a motor vehicle, may become liable for injury or damage caused by or resulting from the intoxication of such minor or person when the sale, furnishing, or serving is the proximate cause of such injury or damage. . . .

OCGA § 51-1-40.[3]

Because this statute uses the terms "sells, furnishes, or serves" alcohol in the disjunctive, it is clear that it was intended to encompass the sale of an alcoholic beverage at places other than the proverbial dram shop.[4] The Court of Appeals acknowledged as much in previous cases[5] and in the case at bar. Nevertheless, the Court of Appeals refused to apply the statute to such sales because, in its view, it "would lead to wholly impracticable results." *Flores*, supra at 336. In this regard, the Court of Appeals reasoned:

[T]o impose liability under the [dram shop act] because these sellers knew a buyer leaving the store with packaged alcohol might at some point consume some or all of the alcohol, and might soon drive after doing so, would require a jury to speculate about or invent a basis for finding that it was foreseeable to the seller that the sale created an unreasonable risk that the buyer could cause harm by driving while intoxicated. Where a jury must rely on speculation or guesswork to reach a verdict, this is an improper basis for imposing liability. Because we will not ascribe to the legislature a wholly unreasonable, impracticable, or

---

[3] The statute should be read in conjunction with OCGA § 3-3-22 which prohibits the sale of an alcoholic beverage to "any person who is in a state of noticeable intoxication." See generally *Chase v. State*, 285 Ga. 693, 695 (681 SE2d 116) (2009).

[4] We note that other states have expressly chosen to exempt convenience stores from dram shop liability. See, e.g., Mo. Rev. Stat. § 537.053 (2) (liability for sale of alcoholic beverage "by the drink for consumption on the premises"); Iowa Code § 123.92 (1) (a) (liability for persons who sell *and* serve alcohol).

[5] See, e.g., *Taylor v. RaceTrac Petroleum*, 238 Ga. App. 761, 764 (519 SE2d 282) (1999); *Perryman v. Lufran, Inc.*, 209 Ga. App. 654, 655 (434 SE2d 112) (1993) (convenience store's liability for acts of intoxicated person is governed by OCGA § 51-1-40), disapproved on other grounds, *Riley v. H & H Operations*, 263 Ga. 652, 655, n. 3 (436 SE2d 659) (1993).

futile intention, we find that the legislature did not intend for the [dram shop act] to apply under these circumstances.

(Citations omitted.) Id. The upshot of the Court of Appeals' decision is that the dram shop act is to be applied only where an alcoholic beverage is served or poured on premises to an adult.[6] That would mean that a convenience store cannot be held liable for selling closed or packaged alcoholic beverages to a noticeably intoxicated adult under any set of circumstances. We cannot accept this interpretation of the statute.

Although the dram shop act makes it clear that it is the consumption of alcohol, not the selling or furnishing, which leads to injuries in this state, it goes on to create two exceptions to the rule for liability purposes: an individual may be liable for injuries if he furnishes or serves alcoholic beverages to a person who is underage, knowing he will soon be driving; and if he furnishes or serves alcoholic beverages to a noticeably intoxicated adult, knowing he will soon be driving. Liability is not imposed under either one of these exceptions, however, unless the furnishing or serving of the alcoholic beverage is the proximate cause of injury. OCGA § 51-1-40. We find these statutory requirements to be straightforward and under the plain language of the statute are equally applicable to convenience stores and traditional dram shops.

In *Delta Airlines v. Townsend*, 279 Ga. 511 (614 SE2d 745) (2005), this Court held that the dram shop act does not apply to sales of alcoholic beverages on airplanes. In so doing, we stated the general rule in cases of this kind to be that

[w]here one provides alcohol to a noticeably intoxicated [individual] knowing that he will soon be driving his car, it is foreseeable to the provider that the consumer will drive while intoxicated and a jury would be authorized to find that it is foreseeable to the provider that the intoxicated driver may injure someone.

Id. at 513. We recognized, however, that

unlike the clientele of land-based establishments, airline passengers generally do not have direct and immediate access to their vehicles after they deplane. Moreover, while

---

[6] Citing *Riley v. H & H Operations*, 263 Ga. 652, supra, and *Taylor v. N. I. L., Inc.*, 221 Ga. App. 99 (470 SE2d 491) (1996), the Court of Appeals acknowledged that the dram shop act applies to the sale of packaged alcoholic beverages to a person who is not of legal drinking age. *Flores*, supra at 336, n. 2.

an airline knows or should know that an intoxicated passenger will shortly be leaving the plane where the alcohol was served, it has no way of knowing whether any of its passengers will "soon" be operating a vehicle as opposed to remaining at the airport or departing by some other means of transportation.

Id. at 515.

Exprezit! argues that, like airlines, convenience stores have no way of knowing if their customers will soon be driving a motor vehicle. It also contends that unlike taverns, bars and restaurants, where customers consume alcoholic beverages on the premises, convenience stores are limited in their ability to discern whether their customers are noticeably intoxicated. We disagree. When a convenience store sells alcoholic beverages to a customer it will often have an opportunity to observe how the customer arrived and, conversely, the manner in which he will depart. Thus, a convenience store may very well know if a customer will soon be driving a motor vehicle. Moreover, the convenience store seller does have an opportunity to observe the customer to determine if he appears to be noticeably intoxicated.[7] It is true that, compared to a traditional dram shop, a convenience store may not have an equal opportunity to observe its customers. But this simply goes to the facts of the case; if a plaintiff cannot demonstrate the convenience store knowingly sold alcoholic beverages to a noticeably intoxicated person who would soon be driving a motor vehicle, the convenience store would be entitled to summary judgment. This is not to say that the dram shop act cannot be applied to sales made by convenience stores as a matter of law. Each case must rise or fall on its own facts. See, e.g., *Studebaker's of Savannah v. Tibbs*, 195 Ga. App. 142, 146-147 (392 SE2d 908) (1990) (whether patron was noticeably intoxicated was question for jury).

The Court of Appeals found the dram shop act inapplicable to a convenience store's sale of packaged alcohol because, even if it sells packaged alcohol to a noticeably intoxicated adult, it could not know if the purchaser "would drink the beer, how much he might drink, when he might do so, or whether he would drive soon after drinking." *Flores*, supra at 335. However, a plain reading of the dram shop act shows that it does not require the seller of alcoholic beverages to know when or how much alcohol a purchaser will consume before he gets behind the wheel. *Riley v. H & H Operations*, 263 Ga. 652, supra,

---

[7] The dram shop act only requires the seller to know that the purchaser is in a state of *noticeable* intoxication. The seller is not obligated to discern whether the purchaser is intoxicated to a lesser degree.

offers guidance on this point.[8] In that case, we found the dram shop act constitutional and reversed the grant of summary judgment to a convenience store that sold packaged alcoholic beverages to a minor. The convenience store argued that the words "driving soon" exposed the store to unlimited liability because, much like the Court of Appeals' concerns in this case, it had no way of knowing that the customer would not be driving until four and one-half hours later. We disagreed, holding that "[a]lthough 'soon' does not have a fixed temporal meaning, in the context of the [a]ct it is sufficiently definite and certain in meaning to give proper guidance to those bound by its terms." Id. at 654. Thus, by focusing in this case on the convenience store's knowledge as to the purchaser's plans to consume the beer, the Court of Appeals missed the mark. The focus should have been solely on the convenience stores' knowledge as to whether its customer was noticeably intoxicated and would be driving soon. Id.; *Delta Airlines v. Townsend*, supra at 513. If a convenience store sells alcohol to such a customer, it is foreseeable that the customer will drive while intoxicated and injure an innocent third party. Id. And if the plaintiff can prove that such sale of alcohol was a proximate cause of any injuries, the convenience store will be held liable. OCGA § 51-1-40 (b).

It is fundamental that:

> In construing a statute a primary rule is that the courts must try to ascertain the purpose and intent of the legislature and then try to construe the law to implement that intent. It is also fundamental that when a statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms. Moreover, it is presumed that all statutes are enacted by the General Assembly with full knowledge of the existing law, including decisions of the courts.

(Citations and punctuation omitted.) *Mullins v. First General Ins. Co.*, 253 Ga. 486, 487 (322 SE2d 265) (1984). The Court of Appeals abandoned these fundamental principles when it declared that the legislature did not intend to apply the dram shop act to the sale of closed or packaged containers of alcohol by convenience stores. It follows that we must answer the question posed on certiorari by this Court in the affirmative.

---

[8] We reject Exprezit!'s assertion that the holding in *Riley* is limited to the sale of alcohol to minors. The dram shop act treats sales to minors and noticeably intoxicated adults identically. *Griffin Motel Co. v. Strickland*, 223 Ga. App. 812, 815 (479 SE2d 401) (1996).

*Judgment reversed. All the Justices concur, except Benham, J., who dissents.*

BENHAM, Justice, dissenting

I respectfully dissent to the majority's opinion that Georgia's Dram Shop Act, OCGA § 51-1-40, applies to grocery and convenience stores that sell alcoholic beverages in closed containers or packages intended for consumption elsewhere. During the years that the dram shop law has been in existence, it has never been applied to grocery stores, convenience stores, or mom and pop roadside stores. In fact, the General Assembly has declared that "the consumption of alcoholic beverages" is the behavior being regulated by the act rather than the sale of such beverages. See OCGA § 51-1-40 (a). If the legislature had intended for the law to apply to such stores, the legislature could have amended the act to provide for their specific inclusion. The herculean step the majority opinion takes today by including such stores in the sweep of the Dram Shop Act is contrary to the history of the act's application and experience.

Establishments such as grocery and convenience stores are different in kind from restaurants, bars and clubs where alcohol is consumed openly on the premises and where employees interact numerous times with their customers. In grocery and convenience stores, store clerks have very little contact with the customers standing in line waiting to make their purchases. Often the brief interaction between grocery and convenience store clerks and their customers is limited to nothing more than determining the amount and form of payment. If the convenience store is in a gas station setting, clerks may be enclosed behind sturdy glass windows where money is exchanged through a small opening in the glass. With the advent of smart technologies, grocery store customers can now use machines to check themselves out and pay for items, essentially eliminating all human interaction. In these situations, store clerks are not in a position to judge the sobriety of their customers, much less to determine whether their customers will be driving soon.

The negative impact of the majority's opinion will be far-reaching, in particular exposing small businesses to indeterminate liability and almost-certain economic ruin. Should we require general store clerks, as opposed to licensed bartenders, to judge sobriety or to investigate which customers arrived at the store by driving a vehicle, rather than as a passenger or pedestrian? Will stores now be required to keep surveillance recordings for the duration of the statute of limitation period on the chance that one of its customers is involved in an accident, perhaps long after he or she last set foot in

the store?[9] The steps necessary to ensure against this liability for grocery and convenience stores are unworkable at best. Courts have had difficulty establishing this knowledge of a patron's intentions with regard to *on-premises* alcohol sales, much less in the context of a fleeting interaction in the checkout line of a grocery or convenience store which sells many products and beverages other than alcohol. See *Becks v. Pierce*, 282 Ga. App. 229, 234 (638 SE2d 390) (2007) (finding "evidence that most customers drove to the [b]ar" was insufficient to establish that they knew the consumer would be driving soon). Moreover, unlike a bar or restaurant, a convenience store employee has no way to monitor or control the customer's post-sale actions. As the Court of Appeals correctly observed below, "[The employee] did not know if [the customer] would drink the beer, how much he might drink, when he might do so, or whether he would drive soon after drinking[,]" therefore providing no legitimate basis to conclude "that it was or should have been reasonably foreseeable to [the employee] that [the customer] would soon drive while intoxicated from consuming the packaged beer it sold." *Flores v. Exprezit! Stores 98-Georgia*, 304 Ga. App. 333, 335-336 (696 SE2d 125) (2010). A finding of proximate cause in these situations would almost always require the jury to rely on pure speculation in order to import liability to a grocery or convenience store. Id. at 336; *Dildine v. Town & Country Truck Sales*, 259 Ga. App. 732, 734 (577 SE2d 882) (2003) (finding that inferences based on "speculation or guess-work [are] improper bases for liability"). Such a result is not supported by the legislative intent behind the statute. Accordingly, I would affirm the judgment of the Court of Appeals.

DECIDED JULY 5, 2011.

*Edward J. Bauer, Mary K. Durant*, for appellants.

*Fain, Major & Brennan, Gene A. Major, Weinberg, Wheeler, Hudgins, Gunn & Dial, Michael A. Sexton, Y. Kevin Williams*, for appellees.

*Lyle G. Warshauer, Oates & Courville, Traci G. Courville, Butler, Wooten & Fryhofer, Alan J. Hamilton, Matthew E. Cook, James D. Summerville*, amici curiae.

---

[9] This Court has held that the spoliation of evidence raises a rebuttable presumption against a party where litigation is "contemplated or pending." *Silman v. Assocs. Bellemeade*, 286 Ga. 27, 28 (685 SE2d 277) (2009) (citing *Baxley v. Hakiel Indus.*, 282 Ga. 312, 313 (647 SE2d 29) (2007)).